[Cite as *State v. Sowders*, 2023-Ohio-4498.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230153 |
| | | TRIAL NO. B-2104918 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| CHRISTOPHER SOWDERS, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 13, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Santen & Hughes* and *H. Louis Sirkin*, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} When a defendant fails to raise an evidentiary objection at trial, whether because they failed to appreciate the problem or as a matter of trial strategy, they are often hamstrung on appeal and limited to plain error review. A bodycam video featuring defendant-appellant Christopher Sowders possessing a handgun five days prior to the crimes for which he was convicted, notwithstanding its shaky evidentiary foundation, fails to clear the high bar of plain error in this appeal. Further, we find no ineffective assistance of counsel, no convincing argument that his convictions were against the manifest weight of the evidence, and no constitutional violations in the Reagan Tokes Law sentencing scheme. We therefore affirm his convictions for aggravated burglary, aggravated robbery, and kidnapping, all with firearm specifications.

I.

{¶2} On the morning of August 11, 2021, two men hid in the backyard of Elizabeth Ventre, a public school teacher. According to her, when she stepped outside to check on her dogs, the men, one Black and one white, approached her and forced her back into the home, brandishing firearms and pointing them near her face. They demanded to know where her son, Charlie, kept his money in the house, insisting that he owed them a debt. The white man, later identified as Mr. Sowders, gave his accomplice zip ties and ordered him to tie up Ms. Ventre's wrists in her bedroom. At one point, she tried to escape out the front door, but she claims Mr. Sowders and his accomplice tackled her, causing injuries. Rummaging through the house, the men opened jewelry boxes, a safe, and other containers, all the while threatening her and admonishing her not to call the police. At one point, Mr. Sowders warned her that he

had killed before and would not hesitate to do so again, emphasizing that he would not be leaving the house empty-handed. She maintained that he and his accomplice had guns with them "the whole time."

{¶3} Panicked, Ms. Ventre told him that she had money in a bank account. With her assistance, he used her laptop to add a cash advance to her checking account, bringing its total to over $10,000. After the men forced her to put on street clothes, the three of them drove in her car to a PNC Bank branch. As confirmed by a neighbor's doorbell camera, Mr. Sowders drove, with Ms. Ventre in the passenger seat and the accomplice in the back. They were trailed by another accomplice, Vincente Quinones, who drove a white Dodge Charger and assisted the men over the phone throughout the ordeal. At the bank, Mr. Sowders told Ms. Ventre to withdraw $10,000 cash and to act normal, adding that if she tried to alert the tellers about the situation, he would shoot her and flee. As established by the recorded bank footage, he stayed physically close to Ms. Ventre, walking her into the bank as she requested the money and signed a slip. The teller testified that Mr. Sowders told her that Ms. Ventre was his grandmother and that she was buying him a car. They returned to the car with the cash, but Mr. Sowders did not stop there. He drove around to multiple ATMs and banks, captured on various ATM and bank videos, withdrawing Ms. Ventre's cash while keeping her close in the vehicle.

{¶4} After several hours, the men parked the vehicle in a Kroger parking lot. Mr. Sowders told Ms. Ventre to lay on the floor in the back seat and ordered her to stay there for 20 minutes while the men fled. He warned her not to call the police, otherwise he would kill her and her son, reminding her that they had taken photos of their identification documents. She waited, then drove to her father's home to take

him to a medical appointment and did not mention the attack, not wanting to disrupt her father's care with her kidnapping. After that, she returned to her neighborhood and told a neighbor that she had been robbed. A friend later convinced her to call the police, and the investigation began.

{¶5} At trial, Mr. Sowders' counsel conceded in opening and closing statements that his client was one of the men who visited Ms. Ventre's house on August 11, citing the state's DNA, cell phone, and video evidence proving his presence at her home that morning. Defense counsel pursued the theory that Ms. Ventre voluntarily went along with Mr. Sowders and willingly withdrew money to repay her son's debt. Crucially, though, he contested Ms. Ventre's claims that he possessed and used a firearm throughout the morning, a fact the state relied on in pursuing firearm specifications on each of the three charges.

{¶6} Despite Mr. Sowders' concessions on identity, the state introduced layers of evidence proving his involvement in the attack. Investigators' first breakthrough was a DNA swab taken from a water bottle in Ms. Ventre's home, which established a likely match for Mr. Sowders' DNA taken from a 2013 crime scene in Indiana. In that case, he was acquitted of burglary and murder charges, facts never learned by the jury in the present case. With a warrant, police searched Mr. Sowders' phone records and concluded that he rented a white Dodge Charger that matched the vehicle driven by Mr. Quinones, the second accomplice in the attack. After a grand jury indictment, police arrested Mr. Sowders and searched his home in Louisville, Kentucky, retrieving a Glock handgun and a rifle. They took a fresh DNA sample, which matched the DNA found on the water bottle.

{¶7} While coordinating with Louisville police to arrest Mr. Sowders and to execute the search warrant, investigators obtained body-worn camera ("BWC") video from an August 6, 2021 incident involving him, just five days prior to the attack on Ms. Ventre in Cincinnati. The video, recorded and provided by Louisville police, depicts police officers approaching a white Dodge Charger with Mr. Sowders inside in the driver seat, seemingly asleep, with a handgun in his lap. After officers pulled him from the vehicle, handcuffed him, and took the handgun away for inspection, Mr. Sowders told officers that he lives in a nearby apartment. He is shown sitting on the ground, handcuffed, for several minutes, at times overcome with emotion. Officers explained that they approached and secured him based on a concerned caller who witnessed him and the gun in the car, but they later informed him that he broke no laws and was free to go.

{¶8} The state used the video throughout trial, referencing it and photo stills taken from the video during examination of several witnesses, showing the video to the jury, and entering the full video into evidence after showing the video deposition of the Louisville police officer who recorded it. Further, Mr. Quinones, who was present inside Mr. Sowders' apartment during the August 6 incident, testified about what Mr. Sowders told him about the incident and the fact that Mr. Sowders kept guns in the apartment. However, he also testified that he never saw Mr. Sowders with a gun on the day of the attack, and the state's lead detective added that he observed no guns in the ATM and bank video footage.

{¶9} The jury convicted Mr. Sowders of aggravated robbery, aggravated burglary, and kidnapping, all with firearm specifications. The court sentenced him to 30 to 34 ½ years in prison, merging one firearm specification with one of the others.

5

He appeals his convictions, asserting plain error regarding the Louisville BWC video and regarding the state's reference to evidence of his DNA recovered from the 2013 Indiana crime scene. Further, he challenges his convictions as against the manifest weight of the evidence, advances an ineffective assistance of counsel claim concerning the absence of a motion to suppress the 2013 DNA evidence, and cites facial constitutional errors in Ohio's Reagan Tokes Law, under which he was sentenced.

II.

{¶10} We first address Mr. Sowders' arguments in his first assignment of error that the trial court improperly admitted the Louisville BWC video and testimony regarding the presence of DNA evidence at a 2013 crime scene in Indiana. He relies primarily on Evid.R. 404, which generally bars evidence of other crimes, wrongs, or acts as pure propensity evidence—that is, when utilized to establish a person's character trait and their conformity in the present case with that trait. Evid.R. 404(B)(1); *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). The state relies on the exceptions to this general rule, found in Evid.R. 404(B)(2), which allows for evidence of other acts for permissible, nonpropensity purposes, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2). In assessing evidence under Evid.R. 404(B), we first "evaluate whether the evidence is relevant *to the particular purpose* for which it is offered," which must not be based on propensity. (Emphasis sic.) *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 26; *see State v. McDaniel*, 2021-Ohio-724, 168 N.E.3d 910, ¶ 17 (1st Dist.). To be relevant and admissible under Evid.R. 404(B), the evidence also "must go to a 'material' issue that is actually in dispute between the parties." *Hartman* at ¶ 27, quoting *Huddleston v.*

6

*United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). We then assess the evidence's probative value against the prejudice of its admission under Evid.R. 403(A), reviewing the trial court's determination for an abuse of discretion. *Id.* at ¶ 29-30; *McDaniel* at ¶ 17.

{¶11} Typically, determining whether evidence is offered for a permissible, nonpropensity purpose under Evid.R. 404(B) presents a question of law, which this court reviews de novo. *Hartman* at ¶ 22, citing Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 4.10 (2d Ed.2019). However, Mr. Sowders concedes that he failed to preserve any errors below relating to the video or to the DNA evidence. Accordingly, we must apply a plain error standard of review: Mr. Sowders must show that an error occurred, that the error was plain, meaning "obvious," and that the error affected his "substantial rights," meaning it "affected the outcome of the trial." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); Crim.R. 52(B). To show the error affected the outcome, the law requires the defendant "demonstrate [] a reasonable probability that but for [the error], the outcome of the trial would have been different." *State v. Mounts*, 1st Dist. Hamilton No. C-210608, 2023-Ohio-3861, ¶ 48-52 (synthesizing recent Supreme Court of Ohio plain error cases); *see State v. Bailey*, 171 Ohio St.3d 486, 2022-Ohio-4407, 218 N.E.3d 858, ¶ 8; *State v. Brunson*, 171 Ohio St.3d 384, 2022-Ohio-4299, 218 N.E.3d 765, ¶ 25; *State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, 200 N.E.3d 1048, ¶ 22. We reverse the trial court's judgment based on plain error only "under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

A.

**{¶12}** Mr. Sowders claims the state introduced the Louisville BWC video for propensity purposes—to convince the jury that because he possessed a firearm in the video on August 6, 2021, he must be the type of person who carries firearms, and thus he used one during the August 11 attack. The state asserts two nonpropensity purposes for using the video: to prove Mr. Sowders' identity, and to support Ms. Ventre's testimony that he used a handgun during the attack.

**{¶13}** The state's identity argument strains under *Hartman*'s rule that the nonpropensity purpose must relate to an actually disputed, material issue. *See Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ 27. Mr. Sowders' concession to identity in opening statements, consistent with his entire theory of the case that Ms. Ventre agreed to pay him to cover her son's debt, supports his claim that identity was not seriously in dispute. Indeed, the *Hartman* court held that the state's other acts evidence was not admissible to show modus operandi, and thus was not admissible to prove identity, because the defense established during opening statements that consent was their theory of the case and thus "identity was not an issue in this case." *Id.* at ¶ 39.

**{¶14}** The state's alternative premise fares no better. In fact, the claim that showing the video was important to prove that Mr. Sowders used a firearm in the attack on Ms. Ventre leans into the type of propensity argument that the rules of evidence seek to exclude. Even though his possession of a handgun five days prior to the attack on Ms. Ventre might logically bolster the notion that he would possess and use it during the robbery, Evid.R. 404(B) squarely rejects such arguments when they rest on a character-based inference. In certain situations, such as when the other acts

8

are " 'inextricably related to the alleged criminal act' " or "establish[] a modus operandi applicable to the crime with which a defendant is charged," Evid.R. 404(B) may make room for their admission. *State v. Lowe*, 69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994), quoting *Curry*, 43 Ohio St.2d at 73, 330 N.E.2d 720. But even if the state had a colorable argument as to either of these possible nonpropensity ends, they ultimately collapse into the purpose of proving the assailant's identity, an issue not in contention here. *See Lowe* at 531. Of course, because trial counsel failed to object, the state never had an opportunity to develop any of the Evid.R. 404(B) exceptions below.

{¶15} Ultimately, our review is cabined to plain error, and we can reverse only upon concluding that any error was plain, and that, but for the error, the outcome of the trial would have been different. *West*, 168 Ohio St.3d 605, 2022-Ohio-1556, 200 N.E.3d 1048, at ¶ 22; *Mounts*, 1st Dist. Hamilton No. C-210608, 2023-Ohio-3861, at ¶ 52. Even assuming, without deciding, that the trial court admitted the Louisville BWC video in error, and that the error was plain, we resolve this question by concluding there is no reasonable probability that, but for admission of the video, the outcome of the trial would have been different. Mr. Sowders argues that, absent the video, the jury would not have concluded that he possessed and brandished a firearm during the attack, eliminating the basis for the firearm specifications and possibly for the aggravated robbery and burglary convictions. But the jury had ample other evidence that he used a gun—mainly Ms. Ventre's testimony—and his opposing evidence failed to undermine her claims. " 'A conviction may rest solely on the testimony of a single witness, including the victim, if believed, and there is no requirement that a victim's testimony be corroborated to be believed.' " *State v. Mitchell*, 1st Dist. Hamilton No. C-210675, 2022-Ohio-3713, ¶ 17, quoting *State v.*

9

*Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 38. Bolstering this point, Mr. Quinones testified that Mr. Sowders kept guns in his apartment, and the Louisville police retrieved firearms from that apartment during their search (and none of that testimony was objected to). Thus, the jury learned about Mr. Sowders' use or access to firearms through three different witnesses—independent of the video.

**{¶16}** Fulfilling their role as fact-finder, the jury found Ms. Ventre's testimony credible, and there is no reasonable probability the video tipped the scales against Mr. Sowders. *See Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 6 ("It is well settled that the responsibility of weighing the credibility of a witness rests with the fact-finder."). In short, the jury's conclusion that Mr. Sowders used a firearm to kidnap and rob Ms. Ventre was backed by significant evidence, and he failed to demonstrate that the state's use of the Louisville BWC video affected the outcome of the trial. Although we do not decide whether its admission constituted error, any potential error here did not create an "exceptional circumstance" warranting reversal under plain error review. *See Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.

B.

**{¶17}** Mr. Sowders also challenges the admission of evidence relating to his 2013 charges of burglary and murder in Indiana, of which he was acquitted in 2014. But across his briefs, he fails to show where in the record the state, as he claims, "introduce[d] the acquitted crime to establish Mr. Sowders' identity." Although Mr. Sowders filed a motion in limine seeking to block any evidence of the 2013 charges and the 2014 acquittals, the court never ruled on it, and our independent review of the

record fails to reveal when or how the jury might have been exposed to the fact he was ever charged with crimes in that case.

{¶18} He first cites to Ms. Ventre's testimony that "[Mr. Sowders] told me that he killed somebody before," and claims that she made additional suggestions about his 2013 charges. Later, in his reply brief, Mr. Sowders for the first time points to the trial testimony of a detective, who stated that "I received a call from a detective in Indiana. * * * The DNA from his crime scene matched our crime scene." This statement was admitted over defense counsel's objection. Later, in response to the question, "[W]ere you also give[n] a name of a possible suspect from the Indiana officer?" the detective stated, "He did provide the name that was from their scene, which was—he said Jared Sowders." Regardless of whether these issues were properly presented in the appellate brief, App.R. 16(A); 1st Dist. Loc.R. 16.1(A) (requiring an appellant to identify and reference "the parts of the record demonstrating the alleged error"), Mr. Sowders concedes that any error regarding the 2013 charges was not preserved and that we may reverse only if we find plain error.

{¶19} At trial, Ms. Ventre testified at least twice to Mr. Sowders' comment that he had killed someone before, which was certainly probative to prove his threats of deadly force. Evid.R. 801(D)(2) (admission by party-opponent not hearsay). But her statements made no reference to any 2013 charges. Additionally, the detective's testimony about the DNA match from Indiana does not refer to any criminal charges, nor to the nature of the crime scene from which the DNA was recovered. He makes no mention of Mr. Sowders' alleged bad acts from that case, minimizing the risk of any unfair prejudice. At most, the jury learned that he was a "suspect" in some other case, but even that paled in comparison to Ms. Ventre's testimony. Therefore, even

assuming without deciding that the trial court erred in allowing references to the 2013 Indiana crime scene and DNA sample, and that the error was plain, Mr. Sowders failed to show how the error affected the outcome of the trial.

{¶20} In sum, we find no plain error regarding the state's use of the Louisville BWC video or references to Mr. Sowders' 2013 Indiana charges because he failed to establish prejudice from their admission. Accordingly, we overrule the first assignment of error.

III.

{¶21} In his second assignment of error, Mr. Sowders challenges his conviction as against the manifest weight of the evidence, positing that "inconsistencies, contradictions, and questionable actions" by Ms. Ventre undermined her credibility and thus the judgment. Further, he claims that "without the wrongful inclusion of other acts evidence admitted by the trial court," her testimony would have been insufficient for the jury to convict him.

{¶22} In reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror," reviewing the evidence, the credibility of witnesses, and the entire record. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). However, we can reverse the judgment only if the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Further, "it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21. And "when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence

simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶23} Even if we set the evidence relating to the Louisville BWC video and references to the 2013 Indiana charges aside, the remaining evidence at trial does not "weigh[] heavily against the conviction," such that reversal and a new trial would be necessary. *See Martin* at 175. Despite the minor inconsistencies in Ms. Ventre's testimony, the jury was free to believe her. Further, the state presented ample evidence that Mr. Sowders and his accomplice waited in the early morning for a chance to rush Ms. Ventre at her back door, forced their way into her home, used zip ties on her, ransacked her home searching for cash, and threatened her into withdrawing thousands in cash from multiple banks under threat of violence. Mr. Quinones and video and photo evidence corroborated many aspects of Ms. Ventre's testimony, except for Mr. Sowders' use of a firearm. But as explained above, Ms. Ventre's testimony sufficed to establish that he used a deadly weapon and threats of force to obtain cash. Therefore, the convictions were not against the manifest weight of the evidence, and we overrule the second assignment of error.

IV.

{¶24} In his third assignment of error, Mr. Sowders challenges his conviction on the grounds of ineffective assistance of counsel, citing both the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution. To prove an ineffective assistance claim, the defendant must demonstrate both that "counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, an appellant "must prove that there exists a reasonable

probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

{¶25} Across Mr. Sowders' brief, he at times seems to attack the performance of trial counsel from his 2014 (successful) trial on the Indiana charges in addition to the effectiveness of his trial counsel below here. We first note that any ineffective assistance of counsel claim on appeal now can only relate to the trial court's judgment from which he now directly appeals, and we confine our analysis accordingly.

{¶26} To that end, he faults his trial counsel for failing to file some type of motion to suppress DNA evidence collected in connection with the 2013 Indiana charges that investigators relied on to identify Mr. Sowders after they discovered it matched DNA recovered from the water bottle left inside Ms. Ventre's home. He broadly asserts a general "expectation of privacy" arising from his apparently mistaken belief that his DNA record was expunged following his acquittal on those charges. Ultimately, though, he fails to connect the dots from this claimed privacy interest to trial counsel's deficient assistance, and thus we are left with only the broad contours of a constitutional argument that his counsel should have sought suppression of the 2013 DNA evidence. Citing no case law or theory supporting that argument, Mr. Sowders fails to meet the first prong of the *Strickland* test on the state of this record. *See State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35 (To prove deficiency on a suppression issue, a defendant "must establish that a basis existed to suppress" the evidence.). We thus overrule the third assignment of error.

V.

{¶27} Finally, for his fourth assignment of error, Mr. Sowders challenges the Reagan Tokes Law ("RTL") sentencing scheme, under which he was sentenced, as a

facial violation of the separation of powers doctrine embedded in the Ohio Constitution. He also claims that it facially violates procedural due process but does not identify a particular constitutional provision or amendment. But this court and the Supreme Court of Ohio considered and rejected these arguments—the RTL does not violate the separation of powers principles embedded in the Ohio Constitution, *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, ¶ 14, 25; *State v. Searight*, 1st Dist. Hamilton No. C-230060, 2023-Ohio-3584, ¶ 13, nor does the RTL violate procedural due process under the Fifth and Fourteenth Amendments to the U.S. Constitution. *Hacker* at ¶ 39-40; *Searight* at ¶ 11. Because Mr. Sowders makes no independent arguments that either this court or the Ohio Supreme Court has not previously rejected regarding the RTL, we overrule his fourth and final assignment of error.

* * *

{¶28} Having overruled all four assignments of error, we affirm Mr. Sowders' convictions and the judgment of the trial court.

Judgment affirmed.

**CROUSE, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.