[Cite as *State v. Lorenzo*, 2012-Ohio-3145.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 26214 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTONIO J. LORENZO | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2011 02 0323 |

DECISION AND JOURNAL ENTRY

Dated: July 5, 2012

DICKINSON, Judge.

## INTRODUCTION

{¶1} Internal Revenue Service agents raided Antonio Lorenzo's office looking for documents in connection with its investigation of Mr. Lorenzo. In a small closet, Agent Michael Fatula found a bulky manila envelope. He opened it and saw a bunch of syringes and vials. Thinking that there could be a compact disc or portable flash drive at the bottom of the envelope, he emptied its contents onto a couch. Looking over the items, he noticed that the vials said "testosterone" on them and "immediately" realized that they might contain contraband. The federal agents contacted local police, who arrested Mr. Lorenzo. The Grand Jury indicted him for possession of drugs and possession of drug-abuse instruments. Mr. Lorenzo moved to suppress the evidence found during the search of his office, but the trial court denied his motion. Following a

trial to the bench, the court found him guilty of the offenses and sentenced him to 90 days in jail. Mr. Lorenzo has appealed, arguing that the trial court incorrectly denied his motion to suppress and his motion for judgment of acquittal. We affirm in part because the court correctly denied Mr. Lorenzo's motion to suppress and there was sufficient evidence to support his conviction for possession of drugs. We reverse Mr. Lorenzo's conviction for possession of drug-abuse instruments because there was no evidence that he had used the syringes "to unlawfully administer or use a dangerous drug . . . or to prepare a dangerous drug . . . ." R.C. 2925.12(A).

## MOTION TO SUPPRESS

{¶2} Mr. Lorenzo's first assignment of error is that the trial court incorrectly denied his motion to suppress. A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*. *But see State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶ 8.

{¶3} Mr. Lorenzo has argued that it was improper for the State to seize the vials of testosterone and syringes because they were not within the scope of the Internal Revenue Service's warrant and did not satisfy the plain view exception to the warrant requirement. "The plain view doctrine is grounded on the proposition that once police

are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost." *State v. Blackert*, 9th Dist. No. 15409, 1992 WL 174642, *4 (July 22, 1992). Under the plain view doctrine, "an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was 'immediately apparent' that the item was incriminating." *State v. Waddy*, 63 Ohio St. 3d 424, 442 (1992) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)); *see Horton v. California*, 496 U.S. 128, 136-37 (1990).

{¶4} According to Mr. Lorenzo, the evidence presented at the suppression hearing did not establish that it was immediately apparent to Agent Fatula that the vials and syringes were contraband. The Ohio Supreme Court has held that "[t]he 'immediately apparent' requirement of the 'plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." *State v. Halczyszak*, 25 Ohio St. 3d 301, paragraph three of the syllabus (1986); s*ee Arizona v. Hicks*, 480 U.S 321, 326 (1987). "In ascertaining the required probable cause to satisfy the 'immediately apparent' requirement, police officers may rely on their specialized knowledge, training and experience[.]" *Halczyszak*, 25 Ohio St. 3d 301 at paragraph four of the syllabus. The United States Supreme Court has also explained that, in the context of determining whether contraband is in plain view, "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742

(1983) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Id*. (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

**{¶5}** Mr. Lorenzo has argued that, to be immediately apparent, an officer not only has to have probable cause that an item is contraband, his determination must arise from his "instantaneous sensory perception" of the suspicious item. *United States v. Garcia*, 496 F.3d 495, 511 (6th Cir. 2007). According to Mr. Lorenzo, Agent Fatula saw the vials of testosterone when they were inside the manila envelope but did not immediately recognize them as contraband. It was not until he emptied the contents of the envelope out and read the words on the side of the vials that he realized they might contain an illicit substance.

**{¶6}** It is true that one definition of "immediate" means "occurring, acting, or accomplished without loss of time: made or done at once: Instant." Webster's Third New Int'l Dict. 1129 (1993). Another, however, is "acting or being without the intervention of another object, cause, or agency: Direct: Proximate . . . being or occurring without reference to other states or factors: Intuitive." *Id*.

**{¶7}** In *Texas v. Brown*, 460 U.S. 730 (1983), an officer stopped Clifford Brown at a routine driver's-license checkpoint. While Mr. Brown was searching through his pockets for his license, the officer saw a small balloon fall between his legs. The officer recognized the balloon as being consistent with drug possession. When Mr. Brown reached for the glove compartment, the officer altered his position to obtain a better view and saw that it contained several small plastic vials and quantities of loose white powder.

**{¶8}** In analyzing whether the officer properly seized the items in the car, the Supreme Court noted that "the fact that [the officer] 'changed his position' and 'bent down at an angle so he could see what was inside' Brown's car, is irrelevant to Fourth Amendment analysis." *Texas v. Brown*, 460 U.S. 730, 740 (1983). The Supreme Court also explained that "the use of the phrase 'immediately apparent' [in its prior cases] was . . . an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." *Id*. at 741. It concluded that an officer does not have to "know" that certain items are contraband to seize them. *Id*. at 742. He only has to have probable cause. *Id*.

**{¶9}** In *Arizona v. Hicks*, 480 U.S. 321 (1987), police officers entered an apartment in hot pursuit of a gunman. Once inside, one of the officers noticed two sets of expensive stereo equipment that were out of character for the apartment, and suspected they were stolen. He, therefore, moved some of the equipment to record its serial numbers. The United States Supreme Court held that the manipulation of the stereo equipment constituted a search "separate and apart" from the search for the shooter. *Id*. at 324. It also held that, because the State had conceded that the officer only had a reasonable suspicion that the stereo equipment was stolen, he could not use the plain view exception to justify his warrantless search. It explained, however, that "a truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion." *Id*. at 328.

{¶10} In this case, it does not matter whether the test for "immediately apparent" requires an officer to instantly recognize that an item may be contraband. Agent Fatula testified that he was searching through the items in a small closet in Mr. Lorenzo's office when he came across an eight-and-a-half-by-eleven-inch-sized manila envelope. He opened it and saw that it was stuffed with syringes and two vials of a clear liquid. Because the scope of the Internal Revenue Service's search warrant included electronic documents that could be contained on a compact disc or small flash drive, he dumped the contents of the envelope onto a couch to see if there was anything else in it. When he looked down at the contents of the envelope, he saw the word "testosterone" written on the side of the vials and it was "immediately apparent to [him] that this could . . . [be] contraband." He also testified that, upon seeing the word testosterone "my initial judgment was that it was something illegal." The trial court found his testimony credible.

{¶11} The word "testosterone" was printed in bold black letters on the side of the vials that were inside the envelope. Agent Fatula noticed the word as he inspected the contents of the envelope that he had legally emptied onto a couch in Mr. Lorenzo's office. Upon reading the words, which, under *Hicks*, did not constitute a search, he immediately suspected that the vials and syringes were contraband. He, therefore, had probable cause to seize them. *See State v. Waddy*, 63 Ohio St. 3d 424, 442 (1992) (explaining requirements for application of the plain view doctrine).

{¶12} Mr. Lorenzo has asserted that, even if Agent Fatula had probable cause to believe that the vials contained contraband, it was not federal agents who seized the vials and syringes. Rather, the Internal Revenue Service contacted local police, who entered

his office and "ultimately seized and took control over the items." He has argued that the local officers were unauthorized to enter his office without their own search warrant.

{¶13} Mr. Lorenzo has not cited any case law in support of his argument that state law enforcement authorities may not seize evidence found in plain view by federal law enforcement authorities. To the contrary, this Court has determined that, once law enforcement personnel observe an item that they recognize as contraband in plain view, the owner loses his right to privacy in the item. *See State v. Blackert*, 9th Dist. No. 15409, 1992 WL 174642, \*4 (July 22, 1992) (citing *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) ("No protected privacy interest remains in contraband . . . once government officers lawfully have . . . identified [it] . . . as illegal."). Courts have also held that, absent a state constitutional or statutory proscription, federal authorities may validly transfer seized evidence to state authorities. *See State v. Mollica*, 554 A.2d 1315, 1328 (N.J. 1989). Under the facts of this case, it appears that, even though the federal agents did not take physical possession of the syringes and vials, they constructively seized the items, and, later, transferred them to local authorities. While the transfer happened to have taken place in Mr. Lorenzo's office, it did not violate his constitutional rights. Mr. Lorenzo's first assignment of error is overruled.

JUDGMENT OF ACQUITTAL

{¶14} Mr. Lorenzo's second assignment of error is that the trial court incorrectly denied his motion for judgment of acquittal. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction . . . ." Whether a conviction is

supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Lorenzo's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

## POSSESSION OF DRUGS

{¶15} The trial court found Mr. Lorenzo guilty of possession of drugs under Section 2925.11(A) of the Ohio Revised Code. Under that section, "[n]o person shall knowingly obtain, possess, or use a controlled substance." Mr. Lorenzo has argued that the State did not present any evidence that he knowingly possessed the vials of testosterone.

{¶16} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Possess" means "having control over a thing or substance . . . ." R.C. 2925.01(K). It may be actual or constructive. *State v. McShan*, 77 Ohio App. 3d 781, 783 (8th Dist. 1991). Possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). In order to constructively possess an item, one must be conscious of its presence and able to exercise dominion and control over it. *State v. Hankerson*, 70 Ohio St. 2d 87, 91 (1982). "[T]he crucial issue is

not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it." *State v. Ruby*, 149 Ohio App. 3d 541, 2002–Ohio–5381, ¶ 30 (citing *State v. Brooks*, 113 Ohio App. 3d 88, 90 (6th Dist. 1996)). A person's knowledge about the presence of drugs can be inferred from circumstantial evidence. *State v. Little*, 9th Dist. No. 09CA009539, 2010–Ohio–101, ¶ 20.

{¶17} Agent Fatula testified that he found the testosterone in a small closet in Mr. Lorenzo's third-floor office. Labeling on the vials indicated that the testosterone had been manufactured in May 2010. Mr. Lorenzo's bookkeeper testified that there was only one stairwell up to Mr. Lorenzo's office, that Mr. Lorenzo typically kept the door locked, and that only she and Mr. Lorenzo had a key. On cross-examination, the bookkeeper noted that the furniture in Mr. Lorenzo's office had been purchased at an estate auction. To rebut the possibility that the items in the closet had belonged to the previous owner of the office furniture and had merely been inside the furniture at the time Mr. Lorenzo purchased it, the State established that the person who had previously owned the furniture died in February 2010, three months before the testosterone was manufactured.

{¶18} Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence to support Mr. Lorenzo's conviction for possession of drugs. The testosterone was in a closet in Mr. Lorenzo's personal office, that he generally kept locked, and to which only one other person, a young woman, had a key. Furthermore, the testosterone was manufactured after the death of the previous owner of the furniture that was in the office, eliminating the possibility that the manila envelope

merely came into the office with the furniture. We, therefore, conclude that there was sufficient evidence to support Mr. Lorenzo's conviction for possession of drugs.

POSSESSION OF INSTRUMENTS OF DRUG ABUSE

{¶19} The trial court also found Mr. Lorenzo guilty of possession of drug-abuse instruments under Section 2925.12 of the Ohio Revised Code. Under Section 2925.12(A), "[n]o person shall knowingly make, obtain, possess, or use any instrument, article, or thing the customary and primary purpose of which is for the administration or use of a dangerous drug, other than marihuana, when the instrument involved is a hypodermic or syringe . . . and the instrument, article, or thing involved has been used by the offender to unlawfully administer or use a dangerous drug, other than marihuana, or to prepare a dangerous drug, other than marihuana, for unlawful administration or use." Mr. Lorenzo has argued that the State failed to present any evidence that the syringes found in his office had "been used . . . to unlawfully administer or use a dangerous drug . . . or to prepare a dangerous drug . . . for unlawful administration or use."

{¶20} The only syringes that law enforcement officers found in Mr. Lorenzo's office were still sealed in their original packaging. We, therefore, agree with Mr. Lorenzo that there was no evidence that they had "been" used to administer, use, or prepare a dangerous drug under Section 2925.12(A). *See State v. Sanders*, 7th Dist. No. 78 C.A. 41, 1978 WL 215018, *1 (June 20, 1978) ("An essential element of Ohio Revised Code Section 2925.12(A) is that there must be proof that the syringe involved had been used by the offender to unlawfully administer or use a dangerous drug or to prepare a dangerous drug."). We note that the State did not charge Mr. Lorenzo with

violating Section 2925.14(C), which prohibits possession of, among other things, hypodermic syringes for the purpose of using them to inject a controlled substance into the human body. R.C. 2925.14(A)(12).

{¶21} The trial court correctly denied Mr. Lorenzo's motion for judgment of acquittal regarding his conviction for possession of drugs under Section 2925.11(A), but incorrectly denied it regarding his conviction for possession of drug-abuse instruments under Section 2925.12(A). Mr. Lorenzo's second assignment of error is sustained in part and overruled in part.

CONCLUSION

{¶22} The trial court correctly denied Mr. Lorenzo's motion to suppress. It correctly denied his motion for judgment of acquittal regarding his conviction for possession of testosterone, but incorrectly denied his motion for judgment of acquittal regarding his conviction for possession of drug-abuse instruments. The judgment of the Summit County Common Pleas Court is affirmed in part and reversed in part, and this matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

 

 

 

                                          _____
CLAIR E. DICKINSON
FOR THE COURT

 

 

 

WHITMORE, P.J.
CONCURS.

BELFANCE, J.
DISSENTING.

{¶23} I respectfully dissent because I do not believe that Agent Fatula had probable cause to seize the testosterone vials.

{¶24} Under the plain view doctrine, the warrantless seizure of an object does not violate the Fourth Amendment if (1) the officer did not violate the amendment in arriving at the place from which the evidence could be plainly viewed, (2) the item is in plain view, and (3) the incriminating character of object is immediately apparent. *Horton v. California*, 496 U.S. 128, 136-137 (1990). In practice, this third prong requires that an officer have probable cause to believe that the object is contraband. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987). Probable cause exists when a person is aware of facts and

circumstances that would warrant a person of reasonable caution to believe that the item observed contains contraband. *See Carroll v. United States*, 267 U.S. 132, 162 (1925).

{¶25}  It is the third prong that is at issue in this case.  Agent Fatula testified that, after he emptied out the manila envelope, he saw "'testosterone'" written on the side of two vials.  The prosecutor asked Agent Fatula if it was "immediately apparent to [him] that [the vials] could * * * be[] contraband[,]" to which Agent Fatula responded affirmatively.   However, the question is not whether something *could* be contraband but, rather, whether the facts and circumstances would warrant a person of reasonable caution to believe that it *is* contraband.   On cross-examination, Agent Fatula admitted that he had "no reason to believe that [the needles and the vials] were illegal contraband[]" when he first saw them.  He also agreed that he did not "have any reason to believe that Mr. Lorenzo or anyone else had illegal contraband by virtue of the two vials[.]"  He then stated that, "[l]acking a prescription to go along with [the vial], [his] initial judgment was that it was something illegal."  However, Agent Fatula also admitted that, "in order for [him] to [determine whether a prescription existed,] [he] would have to inquire as to whether or not Mr. Lorenzo or someone else had a prescription for testosterone[.]"  Thus, although Agent Fatula's suspicions were aroused, it is clear that he recognized that possession of the testosterone could be legal or could be illegal and he needed more information to determine whether or not the vials were illegal contraband.  Thus, unlike a situation where one comes upon a scale, a mound of white powder, and baggies, the illegality of the testosterone was not immediately apparent to the agent.

{¶26} It is evident that Agent Fatula's testimony, even if believed did not demonstrate that he immediately knew that the testosterone was illegal. The fact that Agent Fatula agreed when the prosecutor asked him whether it was immediately apparent to him that the items could be contraband, is a conclusory statement that does not satisfy the plain view probable cause analysis. First, asking whether something *could* be contraband is another means of asking whether the person had some reasonable grounds for suspicion that the item could be contraband. However, mere reasonable suspicion does not satisfy the probable cause standard. Second, the probable cause standard cannot be met by the witness offering a conclusory statement. For example, a court could not determine that probable cause existed merely because an officer testified that he "had probable cause;" there would have to be facts in the record to support the conclusion. Similarly, the fact that Agent Fatula agreed with a term of art used by the prosecutor cannot form the basis of determining that the incriminating nature of the item was immediately apparent to him. Instead, the agent would have to offer a factual basis for the conclusion.

{¶27} "[A]n officer may rely on specialized knowledge and training 'to draw inferences and make deductions that might well elude an untrained person.'" *State v. Halczyszak*, 25 Ohio St.3d 301, 307 (1986), quoting *Texas v. Brown*, 460 U.S. 730, 746 (1983) (Powell, J., concurring in judgment). In *Brown*, the officer observed a tied-off balloon on the seat of the defendant's car. *Brown* at 733. When the defendant opened his glove compartment, the officer observed several small plastic vials, loose white powder, and an open bag of party balloons. *Id.* at 734. The officer testified that "he was aware,

both from his participation in previous narcotics arrests and from discussions with other officers, that balloons tied in the manner of the one possessed by [the defendant] were frequently used to carry narcotics." *Id.* at 742-743. This knowledge, combined with the items observed in the glove compartment, provided probable cause for the officer to seize the balloon. *Id.*

{¶28} However, Agent Fatula did not claim any specialized knowledge or training that would provide a basis for it being immediately apparent to him that the vials he discovered were illegal. He did not claim any specialized knowledge concerning steroids or restricted substances of any kind. He was a special agent for the Internal Revenue Service, and nothing in the record indicates that his experience extends beyond the scope of his duties there. There is nothing in the record that indicates that his responsibilities include drug enforcement. For this reason, this case is incongruous with *Brown*.

{¶29} More analogous to this case is *State v. Dabbs*, 80 Ohio App.3d 748 (12th Dist.1992), in which the appellate court had occasion to consider the issue of whether the illegality of a photograph found in plain view was immediately apparent to police. In *Dabbs*, police executed a search warrant at the defendant's house looking for drugs and drug paraphernalia. *Id.* at 749. Though not mentioned in the affidavit, the police had also been informed by the defendant's daughter that the defendant had taken nude pictures of a 13-year-old girl, though the daughter believed she had destroyed all of the pictures. *Id.* During their search of the house, the police seized photographs depicting a female in various stages of undress. *Id.* Though the police later determined that the girl in the photograph was 13 years old, the appellate court affirmed the trial court's

suppression of the pictures. The court agreed with the trial court that, because the photo showed "'* * * a mature female body which no more obviously belong[ed] to a minor than to a young adult[,]'" the illegal nature of the pictures was not readily apparent and, therefore, the police lacked probable cause to seize them. *Id.* at 750-751.

{¶30} As in *Dabbs*, while Agent Fatula's suspicions were aroused, he did not offer any testimony from which to conclude that the illegal nature of the vials was immediately apparent to him. Agent Fatula discovered the vials in a manila envelope containing packaged needles. As Agent Fatula admitted on cross-examination, he observed no other incriminating facts, nor did he claim specialized knowledge or training that would have allowed him to determine that the testosterone was likely to be contraband. In fact, Agent Fatula sought a second opinion from his supervisor, who did not testify. Significantly, Mr. Lorenzo was then asked whether he had a prescription for the testosterone. The fact that the agents had to make further inquiry from Mr. Lorenzo, underscores the fact that it was not immediately apparent that the vials were contraband. Testosterone has many legal uses. Thus, even if the trial court found Agent Fatula's testimony that he thought that the vials could be contraband to be credible, an assumption, or hunch, is not a substitute for probable cause. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

{¶31} At best, Agent Fatula's "initial judgment" that the vials could be "something illegal[]" was a reasonable suspicion but probably better described as a hunch. *See Hicks*, 480 U.S. at 327-328 (holding that reasonable suspicion is insufficient to conduct a search or seizure under the plain view doctrine). Thus, I cannot say that he

had probable cause to seize the vials and, therefore, believe that the testosterone vials should be suppressed. Accordingly, I dissent.

APPEARANCES:

JACK MORRISON, JR., Attorney at Law, and THOMAS R. HOULIHAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.