[Cite as *State v. Rainey*, 2023-Ohio-4666.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230055 |
| | | TRIAL NO. B-2100811-B |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| MELOGRO RAINEY, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 22, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher*, *Hal Arenstein* and *Elizabeth Conkin*, for Defendant-Appellant.

**BOCK, Judge.**

{¶1}    For about a year, based on community complaints about drug activity, police had been investigating a building in Cincinnati, as well as those entering and leaving the building. Defendant-appellant Melogro Rainey was one of the people entering and leaving the building.

{¶2}    Eventually, police arrested Rainey on multiple drug- and gun-related charges. Following a jury trial, Rainey was convicted of drug trafficking and possession of drugs. Rainey appeals, asserting that the trial court misstated the law in its constructive-possession jury instruction, he received the ineffective assistance of counsel, and his convictions were not supported by sufficient evidence and were contrary to the manifest weight of the evidence.

{¶3}    We hold that (1) the jury instructions were in accordance with Ohio law, (2) it is not apparent that counsel's performance fell below the standard of reasonable legal assistance, and (3) Rainey's convictions were supported by sufficient evidence and the jury did not lose its way or create a manifest injustice in finding Rainey guilty. Therefore, we affirm the trial court's judgment.

## I.    Facts and Procedure

### A. The state indicted Rainey on multiple drug-related charges

{¶4}    In February 2021, the state indicted Rainey, along with codefendant Kendall Tye, on five counts of drug trafficking in violation of R.C. 2925.03(A)(2), five counts of drug possession in violation of R.C. 2925.11(A), and having a weapon while under a disability ("WUD") in violation of R.C. 2923.13(A)(3). Counts one and two included major-drug-offender specifications. Counts five and six also included major-drug-offender specifications, and the drug involved was a fentanyl-related compound.

1. The Trial

**{¶5}** Rainey was tried by a jury on all charges other than the WUD, on which he waived his right to a jury trial. After a bench trial, the trial court acquitted Rainey of the WUD charge.

*Officers conducted multiple traffic stops on Rainey*

**{¶6}** Cincinnati Police Officer Tom Weigand testified that Cincinnati police had received complaints from the community about drug transactions taking place at 1842 Baltimore Avenue ("the Baltimore property") in Cincinnati, Ohio. In response, police officers began surveilling the Baltimore property. Over the course of about a year, Weigand and other officers observed Rainey and two other people going into and leaving the Baltimore property, using a key to enter.

**{¶7}** In January 2020, Cincinnati Police Officer Cian McGrath made a traffic stop on Rainey on Baltimore Avenue at the request of a plain-clothes officer conducting surveillance in the area. While Rainey received a citation, the sole purpose of the stop was to identify him. McGrath found no contraband. Rainey's driver's license showed he lived one to two miles from the Baltimore property.

**{¶8}** In May 2020, Cincinnati Police Sergeant Christopher Clarkson, a member of the "Place-Based Investigations of Violent Offender Territories" unit, made a traffic stop on Rainey per a "gang unit" officer's request. Clarkson did not see the violation and found no contraband. Clarkson gave Rainey a warning and let him go.

**{¶9}** In October 2020, Cincinnati Police Officer Joshua Condon pulled over Rainey about a block from the Baltimore property after receiving a report from the "Gun Crime Task Force" and the "Gang Unit," which work hand-in-hand, that Rainey had committed a traffic violation. Condon saw marijuana "shake" (the loose substance

3

that remains after separating marijuana seeds from leaves) in the console of the car, but he did not arrest Rainey because the amount was "unrecoverable." He found no other contraband or money.

*Police observed the Baltimore property*

{¶10} Weigand testified that the police had been surveilling the Baltimore property "off and on," about 30 times over the course of a year, as the "goal [was] to get a search warrant for that residence to go in there and see what's going on." Investigators passing the Baltimore property would stop and watch from a church parking lot if they saw activity. If not, they would keep driving.

{¶11} Weigand conducted a search to determine who owned the Baltimore property—it was not in Rainey's name. He did not investigate who paid rent or taxes at the Baltimore property.

*A neighbor's camera captured Rainey accessing the Baltimore property*

{¶12} Police eventually learned the community center next door had an exterior camera pointing in the direction of the Baltimore property. The community center let the police "view their cameras and observe Rainey coming and going from the place using a key."

{¶13} The state introduced only one instance of the community center's surveillance camera footage, from January 21, 2021. The footage showed Rainey sitting in his car. Within five to ten minutes apart from each other, Rainey and co-defendant Tye used a key to access the Baltimore property. After a few minutes, the men left at the same time, Tye on foot and Rainey by vehicle.

**{¶14}** Weigand testified that officers attempted to approach Tye after he left the Baltimore property on January 21, 2021. Tye, however, fled on foot after throwing a bag that he had been carrying, which contained $50,000 and scales.

### *Officers conducted a final traffic stop on Rainey*

**{¶15}** Weigand testified that another officer, Taylor Howard, witnessed Rainey engage in a hand-to-hand drug transaction around the corner from the Baltimore property on January 21, 2021. But Howard testified, "They radioed for us to stop his vehicle for a hand-to-hand drug transaction that they observed." Howard and his partner stopped Rainey after they saw Rainey make an illegal U-turn and searched him and the vehicle.

**{¶16}** In Rainey's car, Howard found a receipt book containing what he believed were various addresses from locations that Rainey claimed he either owned or managed. He found $3,500 in cash that was "stack[ed]" according to denomination in a bag sitting in the front seat. Officers found no drugs other than marijuana "shake." Officers let him go with a warning for the U-turn after about ten minutes.

### *Officers obtained a warrant and searched the Baltimore property*

**{¶17}** Officers obtained a search warrant for the Baltimore property. Rainey was not identified on the warrant. With the help of a S.W.A.T. team, officers searched the Baltimore property the same evening that they attempted to approach Tye and stopped Rainey for the final time.

**{¶18}** The main area of the Baltimore property contained a kitchen, a living area, and a back room. The basement was not accessible from the main part of the house. When Weigand walked into the Baltimore property, he saw that the kitchen

counter was "covered with different kinds of drugs and drug-processing equipment and drug scales."

{¶19} During the search, officers found a large amount of contraband throughout the kitchen, including on the stove, the kitchen table, the counters, under the sink, and in a drawer. Specifically, officers found digital scales with drug residue, money, foil, fentanyl packaged in foil, cocaine, and marijuana. On the kitchen table were three unloaded, but operable, guns, one with an extended magazine. In a kitchen cabinet, they located cocaine, ammunition, two guns and a magazine with five rounds. In another kitchen cabinet, officers found false-bottom food containers filled with bags of drugs. In a kitchen drawer, officers found five bags of drugs. On the kitchen counters, they found more drugs, money, and blenders caked with white residue. Under the kitchen sink were more drugs.

{¶20} In the living room, officers found a drum magazine (used to hold a large number of bullets), more drugs, a digital scale, bullets, and photographs of Rainey and Tye. And in the back room, officers found marijuana, a large amount of ammunition, money, boxes for the guns, and "cut," a powder used to mix cocaine and fentanyl. Officers recovered a total of $7,254 from the Baltimore property. Further, alone in the Baltimore property was a Cane Corso dog "about the size of a tiger" named "Rambo."

{¶21} And the state introduced paperwork found at the Baltimore property bearing Rainey's name, such as articles of organization for two limited liability companies of which Rainey was an owner, an accident report in which Rainey was involved, a letter to Rainey from the housing inspector, and a 2020 dog license for a Cane Corso signed by Rainey and listing the Baltimore property as the address.

2. Rainey objected to the court's jury instructions

**{¶22}** The trial court's instruction stated, "Constructive possession will be established where the accused was able to exercise dominion or control over the contraband." Rainey objected to the court's proposed jury instruction involving constructive possession, arguing that the court should follow *State v. Mitchell*, 190 Ohio App.3d 676, 2010-Ohio-5430, 943 N.E.2d 1072 (1st Dist.). Citing *Mitchell*, Rainey's proffered jury instruction stated, "Constructive possession occurs when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *See id.* at ¶ 5.

**{¶23}** The trial court's instructions to the jury read, in part:

Possession may be actual or constructive. While mere presence in the vicinity of contraband is insufficient to establish possession, constructive possession will be established where the accused was able to exercise dominion or control over the contraband.

However, the mere fact that contraband is located within the premises under one's control does not of itself constitute constructive possession. It must also be shown that the person was conscious of the presence of the contraband.

**{¶24}** During deliberations, the jury submitted a question asking the court to define the essential elements of trafficking in cocaine. The court reread the instructions, including the constructive-possession instruction. The jury returned approximately 40 minutes later, finding Rainey guilty of all the drug-possession and trafficking counts. Rainey now appeals.

7

## II. Law and Analysis

**{¶25}** Rainey asserts three assignments of error: that the trial court's constructive-possession jury instruction misstated the law, he received the ineffective assistance of counsel, and his convictions were not supported by sufficient evidence and were contrary to the manifest weight of the evidence.

### A. The trial court correctly instructed the jury on constructive possession

**{¶26}** In his first assignment of error, Rainey argues that the trial court's constructive-possession jury instruction materially misstated Ohio law and misled the jury. He asserts that the trial court's choice of the words, "**able to exercise** dominion or control" changed the behavior necessary to establish constructive possession, and those words are not interchangeable with "**exercises** dominion or control."

**{¶27}** Rainey further argues that the placement and ordering of sentences in the instruction changed its meaning. The jury instructions stated, "However, the mere fact that contraband is located within the premises under one's control does not of itself constitute constructive possession. It must be also shown that the person was conscious of the presence of the contraband." He asserts that "however" and "must be also" connect the sentences, "render[ing] them capable of only one interpretation – as long as the defendant knew the contraband was in the premises over which Mr. Rainey had control, Rainey can be found to have constructive possession of the contraband."

#### 1. A trial court's jury instructions must accurately state the law

**{¶28}** In reviewing a trial court's jury instructions, we consider the instructions as a whole and determine whether the court correctly stated the law. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135. If the instruction misstated the law, we consider whether the erroneous instruction misled the jury. *Id.*

**{¶29}** A trial court must fully and completely provide the jury with all instructions that are relevant and necessary for it to weigh the evidence and to discharge its duty as the factfinder. *State v. Houston*, 1st Dist. Hamilton No. C-190598, 2020-Ohio-5421, ¶ 33, citing *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus; *State v. Robinson*, 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, ¶ 18. An instruction cannot be judged in isolation; rather, it must be viewed in the context of the overall charge. *Robinson* at ¶ 18, citing *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph four of the syllabus.

**{¶30}** A trial court must give a defendant's requested instructions to the jury if they are correct, pertinent statements of law and are appropriate under the facts of the case. *Houston* at ¶ 34, citing *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993); *State v. Bush*, 1st Dist. Hamilton No. C-090291, 2010-Ohio-2874, ¶ 13. But a trial court need not provide the requested instruction verbatim; instead, it may communicate the same legal principles using its own language. *State v. Brewster*, 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 58.

    2. <u>The trial court's jury instructions accurately explained constructive-possession law</u>

**{¶31}** Rainey maintains that his proposed jury instruction—that constructive possession exists "when an individual **exercises** dominion and control over an object"—accurately reflects Ohio's constructive-possession law. In support of his proposed instruction, Rainey argues that the trial court misstated the law when it instructed the jury that "constructive possession will be established where the accused was **able to exercise** dominion or control over the contraband." He contends that the trial court's instruction misstates the law of constructive possession. We disagree.

{¶**32**} R.C. 2925.11(A)(2) provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Under R.C. 2925.01(K), " '[p]ossess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982), syllabus.

{¶**33**} In the First District, constructive possession may exist when an individual, conscious of an object's presence, "is able to exercise dominion and control over an item, even if he does not have immediate physical possession of it." *State v. Devaughn*, 1st Dist. Hamilton No. C-180586, 2020-Ohio-651, ¶ 32, citing *Hankerson* at syllabus; *see State v. Murrell*, 1st Dist. Hamilton No. C-020333, 2003-Ohio-2068, ¶ 18 ("Constructive possession is present when the accused is able to exercise dominion or control over the contraband."); *State v. Bettis*, 1st Dist. Hamilton No. C-060202, 2007-Ohio-1724, ¶ 10 ("Constructive possession exists when a person is able to exercise dominion and control over an item, even without physically possessing it."); *State v. Hart*, 1st Dist. Hamilton No. C-060686, 2007-Ohio-5740, ¶ 14. In these instances, knowledge of the object's presence is significant. "Otherwise a conviction could be based upon drugs placed by another." *Devaughn* at ¶ 32, citing *Hankerson* at syllabus. Indeed, for nearly 50 years this court has held that constructive possession can be established with "evidence that a defendant was both aware of the presence of illegal drugs and had the power to control them." *Cincinnati v. Stirsman*, 322 N.E.2d 282, 283 (1st Dist.1974).

**{¶34}** We recognize that this court has also explained that "[c]onstructive possession occurs when 'an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession.' " *Mitchell*, 190 Ohio App.3d 676, 2010-Ohio-5430, 943 N.E.2d 1072, at ¶ 5, quoting *State v. Thomas*, 1st Dist. Hamilton No. C-020282, 2003-Ohio-1185, ¶ 9, citing *Hankerson* at syllabus. But *Mitchell* and *Thomas* do not mean that the trial court misstated the law. Rather, "[c]onstructive possession exists when a person exercises or has the power to exercise dominion and control over a [known] object, even though there has been no physical contact with it." *State v. Green*, 1st Dist. Hamilton No. C-860791, 1988 Ohio App. LEXIS 1401, 8 (Apr. 20, 1988).

**{¶35}** To hold otherwise would bring this court into conflict with every Ohio appellate district. *See State v. Keister*, 2d Dist. Montgomery No. 29081, 2022-Ohio-856, ¶ 44; *see also State v. Bustamante*, 3d Dist. Seneca Nos. 13-12-26 and 13-13-04, 2013-Ohio-4975, ¶ 25; *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.); *State v. Underdew*, 5th Dist. Muskingum No. CT2021-0006, 2021-Ohio-3811, ¶ 19; *State v. Shelby*, 2019-Ohio-1564, 135 N.E.3d 508, ¶ 24 (6th Dist.); *State v. St. John*, 7th Dist. Belmont No. 09 BE 13, 2009-Ohio-6248, ¶ 19; *Ohio v. Marneros*, 8th Dist. Cuyahoga No. 109258, 2021-Ohio-2844, ¶ 46; *State v. Lorenzo*, 9th Dist. Summit No. 26214, 2012-Ohio-3145, ¶ 16; *State v. Edwards*, 10th Dist. Franklin No. 17AP-738, 2019-Ohio-3012, ¶ 35; *State v. Little*, 11th Dist. Portage Nos. 2023-P-0011 and 2023-P-0012, 2023-Ohio-4098, ¶ 63; *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 21.

**{¶36}** Here, the trial court instructed the jury:

Possess or possession means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

Possession is a voluntarily [sic] act that the possessor knowingly procured or received the thing possessed or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession.

A person has possession when he knows that he has an object on or about his person, property, or places where it is accessible to his use or direction and he has the ability or direct -- the ability to control or direct its use.

Possession may be actual or constructive, while mere presence in the vicinity of contraband is insufficient to establish possession, constructive possession will be established where the accused was able to exercise dominion or control over the contraband.

However, the mere fact that contraband is located within the premises under one's control does not of itself constitute constructive possession. It must also be shown that the person was conscious of the presence of the contraband.

{¶37} When read in their entirety, the jury instructions accurately reflect the relevant constructive-possession law as described by this court and every other appellate district in Ohio. The instructions clearly explain that (1.) possession may be actual or constructive, (2.) a person's mere presence near an object does not establish

possession, and (3.) constructive possession exists where a person is aware of an object's presence and is able to exercise dominion and control over the object. We find no merit to Rainey's argument.

### 3. Placement and order of sentences did not misstate the law

{¶38} Rainey also contends that the trial court's placement and order of sentences changed their meaning: "However, the mere fact that contraband is located within the premises under one's control does not of itself constitute constructive possession. It must be also shown that the person was conscious of the presence of the contraband." He argues that this can only be understood to mean that a defendant constructively possesses that contraband if the defendant knows contraband is in a premises over which the defendant has control. This, Rainy claims, is not the law.

{¶39} But this portion of the jury instructions recites, verbatim, the Ohio Supreme Court's explanation of constructive possession as stated in *Hankerson*. In *Hankerson,* the court defined constructive possession and explained that Mr. and Mrs. Hankerson "had dominion and control of the home," but reasoned, "However, the mere fact that the property is located within the premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the object." *Hankerson*, 70 Ohio St.2d at 91, 434 N.E.2d 1362. Mr. and Mrs. Hankerson's convictions were upheld based on their constructive possession of stolen stereo speakers in their son's bedroom, where the speakers were "overtly displayed," the Hankersons "had knowledge of and reason to believe that the stereo equipment * * * was stolen" and the Hankersons had reason to believe that their son "brought stolen property into the family home." *Id.* at 93.

{¶40} More recently, in the context of firearm-related charges, this court explained that "[c]onstructive possession may be inferred where the defendant has control and dominion over the premises and is aware that the item is on those premises." *State v. Jackson*, 1st Dist. Hamilton No. C-110570, 2012-Ohio-2727, ¶ 14; *see State v. Harris,* 8th Dist. Cuyahoga Nos. 98183 and 98184, 2013-Ohio-484, ¶ 18 (rejecting a similar challenge to jury instructions regarding constructive possession).

{¶41} Reading the instructions together, the trial court correctly informed the jury that mere access to an object, achieved through control or dominion of the premises, does not amount to constructive possession of the object. We find no error in the trial court's jury instructions. Thus, we overrule the first assignment of error.

## B. **Rainey received the effective assistance of counsel**

{¶42} Rainey's second assignment of error asserts that he received ineffective assistance of counsel, denying him his sixth amendment right to counsel.

### 1. Ineffective-assistance claims require proof of deficiency and prejudice

{¶43} To succeed on an ineffective-assistance-of-counsel claim, an appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance deprived the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

{¶44} In any ineffectiveness-of-counsel case, counsel's decisions must be directly assessed for reasonableness, applying a heavy measure of deference to counsel's judgments. *Strickland* at 668. "A licensed attorney is presumed to be competent, and a defendant claiming ineffective assistance bears the burden of proof."

14

*State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Debatable trial tactics do not demonstrate deficient performance and "do not constitute a deprivation of the effective assistance of counsel." *State v. Smith*, 1st Dist. Hamilton No. C-180151, 2019-Ohio-5264, ¶ 63, quoting *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). We "must refrain from second-guessing strategic, tactical decisions and strongly presume that counsel's performance falls within a wide range of reasonable legal assistance." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

**{¶45}** "To warrant reversal, '(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 694. "Speculation about the factfinder's possible reaction to trial counsel's strategy is insufficient to demonstrate prejudice." *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶ 142.

### 2. Counsel's performance was not deficient

**{¶46}** Rainey argues that he was prejudiced by trial counsel's failure to preserve his objection to the trial court's constructive-possession instruction. But because the trial court's constructive-possession instruction was a correct statement of law, Rainey's counsel was not ineffective for failing to preserve his challenge to the instruction. Rainey also argues that he was prejudiced by counsel's failure to object to irrelevant and hearsay evidence, which allegedly tainted the jury's verdict.

### a. Surveillance evidence

**{¶47}** Rainey challenges the testimony and evidence involving police traffic

stops and surveillance during the year before his arrest, arguing that the testimony was elicited solely to portray Rainey as a drug trafficker without any evidence to substantiate it. Specifically, Rainey asserts that allowing the jury to know that police had been surveilling Rainey for a year before his arrest was prejudicial because it "usurped the presumption of innocence."

{¶48} After police first saw Rainey enter and exit from the Baltimore property about a year before his arrest, an officer performed a pretextual stop to identify Rainey. The officers stopped him on other occasions when he was in the vicinity of or at the Baltimore property. The officers who stopped Rainey testified that they were in various units that monitored drugs, gangs, and violence. Officer Condon testified, without objection, that he saw in Rainey's vehicle "marijuana shake," which is left over from someone using a grinder to separate marijuana seeds from leaves.

{¶49} We cannot say that Rainey's counsel's failure to object was not trial strategy. But even if counsel should have objected, Rainey cannot establish that there was a reasonable probability of a different outcome in his trial. There was a plethora of evidence supporting Rainey's convictions. If the trial court had excised evidence about the police surveillance and traffic stops, the result likely would remain the same.

b. Evid.R. 404 Evidence

{¶50} Rainey takes issue with an officer describing Rainey as a drug dealer, asserting that it was other-acts evidence under Evid.R. 404(B) to which Rainey's counsel should have objected.

{¶51} Though Rainey takes issue with the officer's description of Rainey—calling him a "larger-scale drug trafficker"—he fails to explain how this amounted to other-acts evidence. The crux of this case is that Rainey used the Baltimore property

16

as his base for his drug-trafficking operation. Counsel was not ineffective for failing to object to other-acts testimony that did not exist.

### c.  Cumulative Error

**{¶52}** Finally, Rainey asserts that the cumulative effect of trial counsel's ineffective assistance deprived him of his sixth amendment right to counsel. But because we hold that Rainey's counsel's performance was not deficient, there was no cumulative error. We overrule Rainey's second assignment of error.

## C.  **Rainey's convictions were supported by sufficient evidence**

**{¶53}** Rainey's third assignment of error argues that his convictions were based on insufficient evidence, denying him due process under the Fourteenth Amendment to the United States Constitution. A sufficiency-of-the-evidence claim is a legal standard that tests whether the state presented sufficient evidence to support the verdict. *See State v. Messenger,* 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 13, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). This court views the evidence in a light most favorable to the state and determines whether a rational trier of fact could have found that the state proved each element of the offense beyond a reasonable doubt. *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12. This court does not weigh the evidence unless, after viewing the evidence, it weighs heavily against conviction. *Id.*

**{¶54}** R.C. 2925.11(A) prohibits a person from "knowingly obtain[ing], possess[ing], or us[ing] a controlled substance or a controlled substance analog." And R.C. 2925.03(A)(2) prohibits a person from knowingly "[p]repar[ing] for shipment, ship[ping], transport[ing], deliver[ing], prepar[ing] for distribution, or distribut[ing] a controlled substance or a controlled substance analog, when the offender knows or

has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

**{¶55}** The amount of drugs and drug-processing equipment found inside of the Baltimore property alone indicated that the property's purpose was to store and prepare drugs for distribution. Police observed Rainey at the property multiple times over the course of one year. His personal documents were recovered during the search of the Baltimore property. Rainey accessed the house with a key at least once. A rational trier of fact could have found that Rainey knowingly possessed drugs and prepared those drugs for shipment or distribution, knowing that the drugs were intended for resale. We, therefore, overrule Rainey's third assignment of error.

### D. <u>Rainey's convictions were not contrary to the weight of the evidence</u>

**{¶56}** In his fourth assignment of error, Rainey argues that his convictions were against the manifest weight of the evidence, denying him due process under the Fourteenth Amendment to the United States Constitution. Rainey challenges the jury's resolution of the conflicting and inconsistent evidence, arguing that it created a manifest miscarriage of justice.

**{¶57}** To determine whether a defendant's convictions were contrary to the manifest weight of the evidence, this court reviews the record, weighs the evidence and all reasonable inferences, considers the witnesses' credibility, and determines whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned." *MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, at ¶ 24, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). While this court considers witness credibility, "the trier of fact is in the best position to judge the credibility of the witnesses and the weight to

be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16.

{**¶58**} We reverse a conviction on manifest-weight grounds only in "exceptional cases in which the evidence weighs heavily against the conviction." *MacDonald* at ¶ 24. This court will not "substitute [our] judgment for that of the trier of fact on the issue of credibility of the witnesses unless it is patently apparent that the factfinder lost its way." *State v. Richards*, 1st Dist. Hamilton No. C-210656, 2022-Ohio-4698, ¶ 13, quoting *State v. Williams*, 10th Dist. Franklin No. 10AP-779, 2011-Ohio-4760, ¶ 21, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81 (2d Dist.).

{**¶59**} Rainey asserts that the jury lost its way because the evidence against him was "inconsistent, weak, and unpersuasive." We disagree. The jury was free to choose to accept some, all, or none of the testimonial evidence, and it was in the best position to assess the credibility of the witnesses' testimonies as to what they observed. *See State v. Gasper*, 1st Dist. Hamilton No. C-220218, 2023-Ohio-1500, ¶ 75, citing *State v. Fether*, 5th Dist. Stark No. 2011-CA-00148, 2012-Ohio-892, ¶ 44.

{**¶60**} This is not one of those rare cases in which the evidence weighs heavily against the convictions. We overrule Rainey's fourth assignment of error.

### III. Conclusion

{**¶61**} For the reasons stated above, we overrule Rainey's assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **WINKLER, J.,** concur.

Please note:

19

The court has recorded its entry on the date of the release of this opinion.