[Cite as *State v. Rodriguez*, 2025-Ohio-53.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240075 |
| | | TRIAL NO. | B-2200636-A |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| AMY RODRIGUEZ, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: January 10, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher* and *Elizabeth Conkin*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Where a defendant is charged with 11 nearly identical counts of endangering children, and where each count corresponds to a specific act of torture or abuse that the defendant is alleged to have committed against the victim, must the trial court provide the jury with instructions and/or verdict forms for each count that specify the conduct that was the basis of the count?

{¶2} Defendant-appellant Amy Rodriguez argues that we must answer this question in the affirmative and that the trial court erred in failing to do so. On the record before us, we agree. We hold that where Rodriguez was convicted of some, but not all, of the charged offenses, and where the jury was indisputably confused as to which act of torture or abuse committed by Rodriguez corresponded with each count of endangering children, the trial court committed plain error when it failed to provide the jury with instructions and/or verdict forms that specified the conduct that was the basis of each count.

{¶3} Because the jury instructions and/or verdict forms failed to distinguish the conduct that applied to each count, it is impossible to determine which offenses the jury found Rodriguez to have committed and which charged offenses resulted in acquittals. And because if we order a new trial, Rodriguez might be retried for acts of which the jury found her not guilty, we must hold that the trial court's error precludes retrial for the underlying offenses. For the reasons set forth in this opinion, the trial court's judgment is reversed and Rodriguez is discharged from further prosecution for the conduct at issue in this case.

## I. Factual and Procedural History

{¶4} On February 25, 2022, Rodriguez was indicted for 11 counts of endangering children in violation of R.C. 2919.22(B)(2). Each count was a felony of

the second degree, and the alleged victim of each count was Rodriguez's stepson C.D. Except for Count 5, each count provided that:

> The Grand Jurors of the County of Hamilton, in the name and by authority of the State of Ohio, upon their oaths do find and present that **AMY M RODRIGUEZ, on an undetermined date between January in the year Two Thousand Eighteen and April in the Year Two Thousand Twenty-One** at the County of Hamilton and State of Ohio aforesaid, **recklessly tortured or cruelly abused C.D., a child under eighteen years of age, or a mentally or physically handicapped child under twenty-one years of age, and the violation resulted in serious physical harm to C.D.**, in violation of Section 2919.22(B)(2) of the Ohio Revised Code and against the peace and dignity of the State of Ohio.

(Emphasis sic.) Count 5 was nearly identical to the other ten counts, but for the date upon which the offense was alleged to have been committed. Count 5 alleged that the offense was committed "from on or about the 1st day of January, Two Thousand Twenty-One to on or about the 2nd day of January, Two Thousand Twenty-One."

{¶5} The indictment additionally charged C.D.'s father, A.D., with one count of endangering children in violation of R.C. 2919.22(A). A separate indictment was issued against Rodriguez's parents, Armin and Susan Rodriguez,[1] in the case numbered B-2202282. That indictment charged both Armin and Susan with one count of endangering children in violation of R.C. 2919.22(B)(2), and additionally charged Armin with complicity in the commission of the offense of endangering children.

---

[1] We refer to Armin and Susan by their first names because they have the same surname as Rodriguez.

**{¶6}** The bill of particulars, filed on March 11, 2022, set forth additional allegations regarding the charged offenses. As relevant to Rodriguez, it provided that:

Specifically, C.D. was forced to sit on a bench for multiple hours and days at a time. At times he was tethered to the bench with locked restraints making it impossible for him to leave.

C.D. was forced to stand in a corner facing the wall for up to 14 hours per day for multiple days in a row.

C.D.'s punishments were moved to his bedroom where he was forced to stand in an imaginary box for the entire day while classical music blared from an alarm clock in the room. At the time he was only allowed to wear his little brother's shorts. This took place continuously for multiple weeks.

C.D. was also forced to lean against a wall for extended periods of time holding himself up with only his fingertips causing serious discomfort and pain.

Between 1/1/21 and 1/2/21 C.D. was strapped to his bed with locked restraints on his wrists and ankles throughout the night.

Eventually C.D. was confined to his room without physical human contact over a course of many days. An alarm was on the door and he was monitored by 3 cameras for the purpose of preventing C.D.'s escape.

C.D. was not provided appropriate warm clothing or bedding. Often he was permitted only to wear a pair of his young brother's shorts and was provided only 1 baby size blanket.

C.D. was beaten by [Rodriguez] with a belt on many occasions.

On one occasion he was hit so severely [Rodriguez] caused his legs to bleed.

C.D. was also beaten by [Rodriguez] using a spoon on many occasions. On one occasion he was struck more than 70 times.

Food was restricted from C.D. as a form of punishment. He was denied access to food by it being locked away in the kitchen. He suffered unhealthy weight loss as a result.

C.D. was restricted from using the restroom for extensive periods of time. C.D. was forced to wear a diaper. He could not ask to use the restroom. If C.D. had an accident and urinated on himself [Rodriguez] forced C.D. to take a cold shower.

{¶7} While the bill of particulars set forth 11 specific acts of torture or abuse committed by Rodriguez, it did not link any of those allegations to a specific count in the indictment.

{¶8} On January 17, 2023, Rodriguez filed a request for a more specific bill of particulars. The request stated that the bill of particulars "fails to identified [sic] which indicted count corresponds to the instances of Defendant's alleged conduct otherwise detailed in the State's bill of particulars." The State did not file a response to this motion.

{¶9} A.D. filed a motion to have his charge tried separately from Rodriguez. The State, in turn, filed a motion to consolidate the charges against Rodriguez with the related charges filed against Armin and Susan in the case numbered B-2202282. The trial court granted both motions.

{¶10} A jury trial was held on the charges against Rodriguez, Armin, and Susan. Over the course of the approximately two-and-a-half-week trial, the State

presented testimony from C.D. regarding the various acts of torture and abuse that he had experienced at the hands of Rodriguez. C.D.'s testimony addressed each of the allegations set forth in the bill of particulars. He utilized a "trauma timeline" that he had prepared to explain the progression of abuse. This timeline was admitted into evidence.

{¶11} The State presented additional testimony from persons that had witnessed particular acts of torture, abuse, and/or punishment committed by Rodriguez against C.D., including C.D.'s younger brother P.D., Rodriguez's daughter and niece, and A.D. Testimony was presented from several detectives concerning the investigation of the charges that were ultimately filed against Rodriguez. The State also called various social workers, therapists, physicians, and a former teacher of C.D. to the stand. These witnesses discussed the family dynamic and the mental and physical condition of C.D. during the period that the child endangering was alleged to have occurred.

{¶12} At the close of the State's presentation of evidence, it moved to amend the charges in Counts 1 and 4 from felonies of the second degree to felonies of the third degree. The State argued that this amendment would conform the charges to the evidence presented, which the State believed established physical harm, rather than serious physical harm. The trial court allowed the amendment over Rodriguez's objection.

{¶13} Rodriguez presented testimony from multiple witnesses regarding her treatment of C.D. Collectively, these witnesses testified about C.D.'s problematic behavior and that they never saw Rodriguez utilize excessive or extreme punishments on C.D.

{¶14} In closing argument, the State linked each count in the indictment to a

specific act of torture or abuse committed by Rodriguez, and it utilized the trauma timeline that C.D. had prepared while doing so. The prosecutor stated:

> Now, when I tell you that there's 11 different counts, we need to sort that out a little bit so we know specifically actions or activities or behaviors that Amy engaged in that were corresponding with each count, and I will explain that to you.
>
> .  .  .
>
> So what specific things am I talking about that relate to each allegation. Well, you probably recognize this. This is [C.D.'s] trauma timeline. And I wish that these counts went chronologically; however, as you've heard, trauma sometimes makes kids get a little bit confused as to the dates in the chronology of things.
>
> .  .  .
>
> We've got Count 1, Count 1 relates to this behavior right here where he was forced to sit on the bench. And Count 1 stretches over to the next timeline where he was tied to the bench. So that's that behavior there.
>
> Count 2, he was then forced to stand in the corner. He was forced to stand in the corner all day 14 plus hours a day.
>
> He was not allowed to use the bathroom, he had to eat his meals there, he had a camera on him in case he would have closed his eyes or fallen asleep so that he could be woken up.
>
> We have Count 3. This is after [C.D.] was put in the Children's Hospital after he ran away.
>
> He came back—he came back—I'm sorry—to [Rodriguez's]

house, and he was immediately put right back up into his bedroom, but there were a few little differences he remembered about being putting [sic] back in his bedroom at this time and the time that he was put up there before.

He remembers only two cameras were on him at this time. And he also remembers that he was now put in his brother's little shorts, rather than having to wear a diaper.

And he also remembers classical music was blasting, and he attributes that to the fact that he ran away at one point in time because he could follow the foot patterns of the people in the house to know when they might be occupied and he could get out there, and he remembered that now the music was put on him so that he couldn't follow the foot patterns of everybody anymore.

Then we move to Count 4, and I think he indicated to you that a form of punishment that he had to engage in a lot of different times was standing against the wall using his fingertips.

He said it happened at [sic] lot of times, but the one time he really remembered was when he ran away and he came back home.

Now, we go to Count 5, and this is him being restrained to the bed using the child restraints. He indicates that he was tied with both hands above him and both hands below him—or both feet below him in an X.

Let me go to Count 6, and this is before he ran away when he was in his bedroom. He was up there all day long, no human contact, three cameras on him, a door alarm, he had to stand in an invisible square,

keep on moving, his meals were served to him up there, and he was isolated in that fashion for days on end.

Count 7 goes across the entire course of this—this timeline. Food was—oh, I'm sorry—7 is the inadequate clothing, I believe.

Let me just double check this to make sure I have it right.

Yes, 7 is the abuse he suffered by not being provided adequate clothing. And he testified throughout that he was either standing in nothing but a diaper, his brother's shorts, he was not given pajamas to wear. He only had a little baby blanket to use. He didn't have any sort of bedding or pillow or anything like that to help clothe him or give him warmth.

Count 8 is being hit with a spoon and a belt. That's Count 8 and 9. He was hit with a spoon and a belt many times, but he specifically testified about an occasion in which [Rodriguez] started out with a wooden spoon, hit him so much with it that the spoon broke, and she continued to go forward with a belt. The belt buckle struck him, and it caused him to bleed. And so he talked about that time.

And then he also talked about just being hit with a spoon over and over and over again, and that's the time when [stepsister and stepbrother] counted 75 strikes to his person. And so those are two different episodes that we're talking about there.

Count 10 was carried out throughout this entire time. And that was the inadequate food. And you've heard over and over and over again that during the course of this time food was used as a punishment, he was restricted from what food he could eat, and as a result he suffered

malnourishment because of it.

Count 11 are these two here. You heard much testimony about his use of the bathroom being restricted. He wasn't allowed to use the bathroom when he wanted to. If he asked, he could get into trouble. He had to wait until he was given permission.

And so he was then told to wear diapers, and if he had an accident he would be thrown in a cold shower as punishment for having the accident.

So those are the counts as it relates to [Rodriguez]. Those different activities or those different punishments each relate to a different count.

**{¶15}** Although the prosecutor's comments during closing argument linked a specific act of torture or abuse committed by Rodriguez to each count, the jury instructions did not similarly do so. Nor did the verdict forms. Rather, the jury instructions for each count of the indictment generally set forth the statutory elements of the offense of endangering children, absent any factual allegations specific to an individual count. And the verdict forms for each count simply stated that the jury either found Rodriguez guilty or not guilty of that particular count of endangering children.

**{¶16}** Included in the jury instructions was an instruction on "Multiple Counts," which stated, "The charge[s] set forth in each Count of the indictment constitute a separate and distinct matter. You must consider each Count and the evidence applicable to each Count separately and you must state your finding as to each Count uninfluenced by your verdict as to the other Counts. The defendants may be found guilty or not guilty of any one or all of the offenses charged."

10

**{¶17}** The trial court did not allow the jury to take notes during the trial. Further, the trauma timeline that the prosecutor referred to during her closing argument and that had been admitted into evidence did not set forth the abuse conduct in the same order as the prosecutor explained in her closing argument.

**{¶18}** On the first day of deliberations, the jury sent a question to the court asking, "For Amy's 11 counts, which punishment corresponds to each count?" The trial court responded, "You must refer to the jury instructions and the testimony and the evidence that was presented to you."

**{¶19}** On the second day of deliberations, the jury sent another question to the court asking, "Which count aligns with each separate and distinct matter? We are referencing Page 6 under 'multiple counts' in the jury instructions." The trial court answered, "My answer is the same as it was on Friday; refer to the jury instructions, use your collective memories to apply [] the testimony and evidence that was presented to the instructions."

**{¶20}** Later that day, the jury returned verdicts of guilty on Counts 2, 4, 6, and 10. It found Rodriguez not guilty of the remaining charges. The trial court sentenced Rodriguez to an indefinite sentence of three years to four years and six months of imprisonment.

**{¶21}** Rodriguez now appeals.

## II. *Jury Instructions and Verdict Forms*

**{¶22}** In her first assignment of error, Rodriguez argues that the trial court committed plain error when it failed to provide the jury with final instructions and/or verdict forms that specified which conduct was the basis of each count of the indictment, thereby violating her constitutional rights to due-process and double-jeopardy protections.

11

**{¶23}** While the instructions provided to the jury for each count of endangering children set forth the elements of the offense that the jury was required to find, they did not specify the conduct that served as the basis for each count. For example, the instruction provided to the jury concerning Count 1 stated:

> The Defendant, AMY RODRIGUEZ, is charged with Endangering Children. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on an undetermined date between January 2018 and April 2021, and in Hamilton County, Ohio, the Defendant, AMY RODRIGUEZ, recklessly tortured or cruelly abused a child, C.D., in violation of Section 2919.22(B)(2) of the Ohio Revised Code and against the peace and dignity of the State of Ohio.

**{¶24}** The instructions were nearly identical for the ten remaining counts against Rodriguez, with two exceptions. First, Counts 1 and 4 were third-degree felonies, but the remaining counts were second-degree felonies. The instructions given to the jury concerning these more serious counts provided that the jury must additionally find that Rodriguez's actions "resulted in serious physical harm to C.D." Second, in accordance with the indictment, the instruction given on Count 5 provided that the offense occurred "from on or about [] January 1, 2021 and January 2, 2021," rather than on an undetermined date in the specified range.

**{¶25}** Similarly, the verdict forms simply listed the count at the top of the page and stated that the jury found Rodriguez either guilty or not guilty of endangering children in violation of R.C. 2919.22(B)(2). They did not contain any identifying information specific to that count.

**{¶26}** Rodriguez contends that the jury instructions provided by the trial court were misleading because they were insufficient to identify which alleged conduct

related to each count of the indictment. She argues that either the jury instructions or the verdict forms should have contained this identifying information.

**{¶27}** Rodriguez and the State agree that this court is limited to a plain-error review because she failed to object below to either the jury instructions or the verdict forms. *See State v. Gasper*, 2024-Ohio-4782, ¶ 14 ("A defendant who fails to object to jury instructions waives all but plain error."); *accord State v. Chasteen*, 2024-Ohio-909, ¶ 10-11 (1st Dist.). To establish plain error, a defendant must show that an error occurred, that the error was plain, meaning "obvious," and that it affected the defendant's substantial rights, i.e., that it affected the outcome of the trial. *State v. Sowders*, 2023-Ohio-4498, ¶ 11 (1st Dist.). Even if an obvious error is found to have impacted substantial rights, the error should only be corrected where it "seriously affects the fairness, integrity, or public reputation of judicial proceedings" or when necessary "to prevent a manifest miscarriage of justice." *State v. Bond*, 2022-Ohio-4150, ¶ 35.

**{¶28}** In furtherance of her plain-error argument, Rodriguez contends that the error in the jury instructions was obvious. She asserts that the jury's two questions submitted during deliberations evinced the jury's inability to determine what conduct served as the basis for each count.

**{¶29}** As to the third prong of the plain-error analysis, Rodriguez argues that the erroneous jury instructions impacted her substantial rights. She asserts that she is unable to determine which conduct the jury found her guilty of and which conduct she was acquitted of, and that she is consequently unable to challenge the sufficiency or the weight of the evidence supporting her convictions on appeal. Rodriguez suggests that this deprivation of the means to an effective appeal is in violation of her due-process rights. She further argues that, in the event a new trial is granted, there is a

substantial risk that she could be retried for a crime for which she has already been acquitted in violation of her right to be free from double jeopardy.

{¶30} We address each prong of the plain-error analysis in turn.

### A. The Jury Instructions and/or Verdict Forms Were Insufficient

{¶31} As previously set forth, Rodriguez argues that the trial court should have provided the jury with final instructions and/or verdict forms that specified which conduct was the basis of each count of the indictment.

{¶32} The law is well settled that "[a] trial court must fully and completely provide the jury with all instructions that are relevant and necessary for it to weigh the evidence and to discharge its duty as the factfinder." *State v. Rainey*, 2023-Ohio-4666, ¶ 29 (1st Dist.). An instruction must be viewed in the context of the overall charge provided and not in isolation. *Id.* "An appellate court's duty is to review the instructions as a whole, and, if taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." *State v. Jones*, 2015-Ohio-5029, ¶ 12 (12th Dist.).

{¶33} Although there is no authority from either the Ohio Supreme Court or this district regarding what information must be contained in the jury instructions and verdict forms in a situation where a defendant is charged with multiple carbon-copy counts of the same offense, the Second District has addressed the sufficiency of the jury instructions that were provided in a factually similar case in *State v. Shaw*, 2008-Ohio-1317 (2d Dist.). Shaw was indicted on 15 counts of rape of a minor child under the age of 13 and ten counts of sexual battery. His three daughters were the victims of all offenses. *Id.* at ¶ 3. Following a jury trial, Shaw was found guilty of three counts of rape (one count for each daughter) and two counts of sexual battery. He was acquitted

of the remaining charges. *Id.* at ¶ 6.

**{¶34}** Shaw argued on appeal that he was denied his right to due process because the offenses were not charged with sufficient specificity. *Id.* at ¶ 17-18. While the Second District found that Shaw's indictment was sufficient because it tracked the language of the statutes under which he was charged, it found error in the lack of differentiation at trial as to which facts applied to which charges. *Id.* at ¶ 18. The court explained:

> The only difference in the language of the indictment regarding each of the fifteen counts of Rape and each of the ten counts of Sexual Battery was some variation in dates. In addition to complying with the local rules of discovery providing extensive information, including police reports, the State also filed a bill of particulars wherein the State identified which counts applied to which child and which general acts were encompassed within each group of charges. For example, "The victim in Counts 1, 2, 3, 4, and 5 is JX. The sexual conduct includes, but is not limited to, oral sex and vaginal intercourse." However, there was no way for Shaw to know which particular facts applied to which charge. *This deficiency was never rectified during the trial, by jury instructions, or on the verdict forms.*
>
> The confusion regarding matching events with charges is illustrated by the jury's request early during their deliberations for "clarification on difference between each of the counts." The court merely responded by telling the jury that it already had all of the evidence and law that it needed. In other cases confusion has been avoided by the trial court's use of jury instructions and verdict forms

15

wherein the court identifies charges by using brief labels indicating location or some other identifying fact. *See, e.g., State v. Russell*, 2007-Ohio-2108 [8th Dist.]; *Valentine v. Konteh*, 395 F.3d 626, 634, 637-638 [6th Cir. 2005].

In this case the court did not differentiate the charges, instead instructing the jury as follows: "You must consider each count and the evidence applicable to each count separately, and you must state your finding as to each count uninfluenced by your verdict as to any other count." When the indictment covered extensive spans of up to five years, and each girl testified to multiple incidents of abuse, the jury needed guidance as to which facts the State was alleging to apply to which charges.

While the indictment itself was sufficient, there was never any differentiation of which specific events applied to each charge either before or during trial. Such clarification is necessary for the jury and for the defendant to be able to ensure that he is not indicted on the same incidents at some point in the future. "The Constitution does demand that if a defendant is going to be charged with multiple counts of the same crime, there must be some minimal differentiation between the counts at some point in the proceeding." *Valentine* at 638. Moreover, in a case like this one, where Shaw was acquitted of most of the charges against him, clarification is necessary in order to know what evidence may be presented at a retrial. *See, e.g., id.* at 634-636.

(Emphasis added.) (Cleaned up.) *Id.* at ¶ 21-24. Because neither the trial testimony, jury instructions, or verdict forms differentiated between which acts committed by

Shaw corresponded to which charge, the court held that "there is no way to know upon which of the charges Shaw was convicted and upon which of the charges he was acquitted." *Id*. at ¶ 25. The court accordingly reversed Shaw's convictions and held that "the Double Jeopardy clause of the Fifth Amendment to the United States Constitution precludes retrial for any offenses against the same three victims that occurred during the extensive time span covered by the indictment." *Id*.

**{¶35}** The importance of distinguishing between multiple "carbon-copy" counts of the same offense was recognized by the Sixth Circuit in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), in which the court considered a petition for a writ of habeas corpus in a case that originated in Cuyahoga County, Ohio. Valentine was charged with 20 identical counts of rape and 20 identical counts of felonious sexual penetration. *Id*. at 628. The factual bases supporting each of these counts was not distinguished in the indictment, in the bill of particulars, or during trial. *Id*. Valentine was convicted of all 40 offenses, and 15 of those convictions were affirmed on direct appeal. *Id*. at 629. Valentine then filed a petition for a writ of habeas corpus in the federal district court. That court issued the writ based on a finding that Valentine's due-process rights were violated by the identical counts in the indictment. *Id*. at 630.

**{¶36}** On appeal to the Sixth Circuit, the district court's judgment was affirmed with respect to all but two of Valentine's convictions. The Sixth Circuit held that Valentine's due-process rights were violated where "[t]he indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced." *Id*. at 634. It explained, "The Constitution does, however, demand that if a defendant is going to be charged with multiple counts of the same crime, there must be some minimal differentiation between the counts at some point in the proceeding." *Id*. at 638. The

court plainly stated that "[c]ourts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction." *Id.* at 636-637.

**{¶37}** Collectively, *Shaw* and *Valentine* stand for the proposition that where an offender is charged with multiple, identical counts of the same offense, the trial court must provide some basis for a jury to differentiate the offenses.

**{¶38}** For additional support of her argument, Rodriguez directs us to *Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008). The defendant in *Harp* was charged via indictment with multiple offenses, including seven counts of sexual abuse. The victim of all offenses was the daughter of Harp's girlfriend. *Id.* at 816-817. Harp was convicted of all seven sexual-abuse offenses. *Id.* at 817. On appeal, he challenged the jury instructions that had been provided for those offenses, arguing that "it was error for the trial court not to add language to each of the seven sexual abuse instructions so that the jury would be required to distinguish from the evidence one count from another." *Id.*

**{¶39}** The jury in *Harp* had been provided with identical instructions for each count of sexual abuse. The challenged instructions stated that the jury should find Harp guilty if it believed, beyond a reasonable doubt, that he had engaged in sexual contact with a victim under 12 years of age on a specified date range. *Id.* The court held that the seven identical sexual-abuse instructions provided during Harp's trial were erroneous, *id.* at 818, and that they did not comply with Kentucky law requiring, in a case involving multiple offenses, the instructions "factually [to] differentiate between the separate offenses." (Bracketed text in original.) *Id.* at 817, quoting *Combs v. Commonwealth*, 198 S.W.3d 574, 580 (Ky. 2006). The court stated that, "in a case involving multiple counts of the same offense, a trial court is obliged to include some

18

sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Id.* at 818.

**{¶40}** The *Harp* court further held that any error resulting from the instructions could not be deemed harmless. *Id.* at 818. It held that the prosecutor's attempt to "flesh out" the generic instructions in closing argument by linking each specific act of sexual abuse to a specific count did not "rehabilitate erroneous jury instructions." *Id.* at 819-820. The court ultimately vacated Harp's convictions for sexual abuse and remanded those offenses to the trial court for further proceedings. *Id.* at 825.

**{¶41}** The State argues that the jury instructions and verdict forms in this case were not erroneous, and that Rodriguez's argument should be overruled on the authority of *State v. White*, 2021-Ohio-1644 (1st Dist.). In *White*, the defendant was charged with multiple offenses, including 17 counts of endangering children. *Id.* at ¶ 1. At trial, the State separately discussed each offense and the evidence that it believed supported that offense. *Id.* at ¶ 40. While deliberating, the jury asked for written documentation as to which acts committed by White were connected to each charge of endangering children. In response, the trial court instructed the jury that it should rely on its collective memory. *Id.* White was ultimately convicted of all charges. *Id.* at ¶ 41.

**{¶42}** White argued on appeal that he was deprived of his right to due process and a unanimous jury verdict on the charges of endangering children. In support of his argument, White relied on what he described as a "hodgepodge" of allegations presented by the State at trial, the 17 identically charged counts of child endangering in the indictment, and the jury's request for an explanation of what acts supported each count of child endangering. *Id.* at ¶ 97.

19

**{¶43}** This court rejected White's argument, stating:

White argues this is a "multiples acts" case under *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 37. *Gardner* involved juror unanimity and made a distinction between alternate-means cases and multiple-acts cases. In alternative-means cases, an offense may be committed in more than one way and jury unanimity is required for the crime itself, but not the means by which it was committed. *Id.* at ¶ 49. In multiple-acts cases, several different acts can constitute the charged crime and jury unanimity is required as to which act or incident supports each crime. *Id.* at ¶ 50. To ensure unanimity, the state must specify the particular criminal act upon which it relies for conviction. *Id.*

We find no merit to White's theory that the jury's findings of guilt on each count were not unanimous. The state connected specific acts with each count in the bill of particulars and wrote them on large white poster paper at trial for the jury. After the jurors requested written documentation of which act supported which count, the trial court told the jurors to rely on their collective memories. There is nothing in the record to indicate that the jury did not do that or did not reach a unanimous verdict on each count.

*Id.* at ¶ 98-99.

**{¶44}** Both *White* and the case at bar involve a defendant who was charged with multiple, identical counts of endangering children and a jury that requested guidance as to which of the defendant's acts corresponded to each count in the indictment. But that is where the similarity between the two cases ends. White was

charged with 17 counts of endangering children and was convicted of each count. Rodriguez, in contrast, was charged with 11 counts of endangering children, but was only convicted of four of those counts. Unlike Rodriguez, White was left with no question about which offenses he was convicted of.

**{¶45}** Further, at issue in *White* was the unanimity, or lack thereof, of a jury verdict. In contrast, Rodriguez has challenged the jury instructions and has not raised an argument concerning unanimity. Rodriguez has made no argument that this is a multiple-acts or alternative-means case. And to be clear, it is not. The State charged Rodriguez with 11 counts of endangering children and presented evidence of 11 different instances and types of abuse. In closing argument, the State linked each count to a specific allegation of abuse. The issue for this court to determine is whether either the jury instructions or the verdict forms had to similarly link each count with a specific act committed by Rodriguez, not whether the jury unanimously reached a verdict. Accordingly, *White* does not dictate the outcome in this case.

**{¶46}** Turning to the case before us, the indictment issued against Rodriguez contained 11 nearly identical counts of endangering children. It set forth the elements of the offenses but did not contain any specific acts that Rodriguez was alleged to have committed. *Compare Shaw,* 2008-Ohio-1317, at ¶ 20 (2d Dist.). And while the bill of particulars described 11 different acts of torture or abuse that Rodriguez committed against C.D., it did not link those acts to specific counts in the indictment. *Compare id.* at ¶ 21. During closing argument, for the first time in the case, the State linked each count with a specific act committed by Rodriguez. It referred to C.D.'s trauma timeline while doing so. While the jury was instructed that it must consider the evidence applicable to each count separately and that Rodriguez could be found guilty or not guilty of any or all of the charged offenses, the instructions did not link an alleged act

21

of torture or abuse to a specific count. Rather, for each count of the indictment, the instructions generally set forth the statutory elements of the offense of endangering children, absent any specific factual allegations. And the verdict forms for each count simply stated that the jury either found Rodriguez guilty or not guilty of that particular count of endangering children.

**{¶47}** The jury instructions and verdict forms left the jury with no way to differentiate between the charges or to determine which act corresponded to each count. *See id.* at ¶ 21 and 23; *Valentine*, 395 F.3d at 638; *Harp*, 266 S.W.3d at 818. And the jury undeniably struggled with making this determination. During deliberations, it sent two separate questions to the trial court asking for clarification regarding which act committed by Rodriguez corresponded to each count in the indictment. In response to these questions, the trial court instructed to the jury to "refer to the jury instructions and the testimony and the evidence that was presented to you" and to "use your collective memories to apply [] the testimony and evidence that was presented to the instructions."

**{¶48}** The problem with this response was that the jury instructions did not link a specific act with a specific count in the indictment. So even if the jury referred to the instructions, as it was directed by the trial court to do, it received no guidance. The same is true of the trial court's suggestion that the jury utilize its "collective memories to apply [] the testimony and evidence that was presented to the instructions." While the evidence, including the trauma timeline, delineated 11 specific acts of torture or abuse committee against C.D., it did not link those acts to a specific count in the indictment. The only time in the entire trial that a punishment or act committed by Rodriguez was linked to a specific count was during closing argument. But "closing arguments are not evidence." *State v. Asp*, 2023-Ohio-290, ¶ 59 (5th

22

Dist.).

**{¶49}** This case involved multiple counts of the same offense against the same victim, and each count concerned a *specific* act committed by the defendant. We agree with the *Harp* court that in such cases, "a trial court is obliged to include some sort of identifying characteristic," whether that be in the jury instructions or in the verdict forms, to help the jury "determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Harp* at 818; *see also Valentine* at 638 ("The Constitution does, however, demand that if a defendant is going to be charged with multiple counts of the same crime, there must be some minimal differentiation between the counts at some point in the proceeding.").

**{¶50}** And as stated above, the jury was not permitted to take notes during the trial. The jury could not reasonably have been expected to remember, based solely on the State's comments during closing argument, which of 11 specific acts corresponded to each count. In fact, the State itself misspoke at one point during closing argument about which act was tied to which count. The jury, quite simply, "needed guidance as to which facts the State was alleging to apply to which charges." *See Shaw*, 2008-Ohio-1317, at ¶ 23 (2d Dist.); *see also State v. Martinez*, 2015 ND 173, ¶ 16-20 (where the defendant was charged with three counts of gross sexual imposition against the same victim based on three separate and distinct incidents, the provided jury instructions were erroneous because "the instructions and the verdict forms provided no way to differentiate or distinguish between the counts"). Neither the jury instructions nor the verdict forms provided that guidance in the case at bar.

**{¶51}** For the foregoing reasons, we hold that the trial court erred in failing to instruct the jury as to which alleged act of torture or abuse committed by Rodriguez

corresponded to each count in the indictment. The jury was not given "all instructions that [we]re relevant and necessary for it to weigh the evidence and to discharge its duty as the factfinder." *See Rainey*, 2023-Ohio-4666, at ¶ 29 (1st Dist.). The trial court could alternatively have included this information in the verdict forms, rather than the jury instructions, but it did not.

**{¶52}** We further hold that the defects in the jury instructions and verdict forms were not cured by the State's comments during closing argument discussing which act corresponded to each count. "[A]rguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky*, 436 U.S. 478, 488-489 (1978) (the trial court's failure to give a jury instruction on the presumption of innocence was not cured by defense counsel arguing the presumption in opening and closing statements). Nor were the defects cured by the State's use of the trauma timeline in closing argument. While the timeline set forth each type of abuse or punishment experienced by C.D., it did not link those acts to counts in the indictment and was in a different order than the acts described by the prosecutor in her closing argument.

### B. The Error was Plain and Obvious

**{¶53}** The second prong of our analysis requires us to determine whether the error that occurred below was plain or obvious. *Sowders*, 2023-Ohio-4498, at ¶ 11 (1st Dist.). Courts applying a plain-error analysis do not always elaborate upon this prong or explain when an error will be considered plain. *See id.; Bond*, 2022-Ohio-4150, at ¶ 17; *State v. Mohamed*, 2017-Ohio-7468, ¶ 26; *Chasteen*, 2024-Ohio-909, at ¶ 11 (1st Dist.). In some cases, courts have explained that an error will be considered plain when it constitutes "an obvious defect in the trial proceedings." *State v. Browner*, 2024-Ohio-1547, ¶ 8 (1st Dist.); *accord State v. Morgan*, 2017-Ohio-7565, ¶ 35, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

**{¶54}** Where Rodriguez was charged with multiple counts of the same offense and where each count correlated to a specific act committed by Rodriguez, the trial court's failure to provide the jury with final instructions and/or verdict forms that linked each act to a specific count constituted an "obvious defect in the trial proceedings." *See Browner* at ¶ 8; *Morgan* at ¶ 35. The defect is apparent on the record, as the jury asked two separate questions about how to determine which act corresponded to which count. Absent further guidance, the jury was unable to make this determination.

**{¶55}** But an obvious defect in the trial proceedings notwithstanding, more may be necessary to establish the second prong of the plain-error test. In several cases, both the Ohio Supreme Court and this court have elaborated further and indicated that this prong cannot be satisfied in the absence of a bright-line, binding rule that would establish the obviousness of the defect in the proceedings. *State v. Steele*, 2013-Ohio-2470, ¶ 30 ("Because there was no explicit case law or statutory guidance in Ohio on the standard of proving a police officer's loss of privilege to arrest, it would be difficult to conclude that the trial court's failure to invent such an instruction constitutes an obvious error."); *Barnes* at 28 (explaining that even though the trial court incorrectly instructed the jury with respect to whether the offense of felonious assault with a deadly weapon constituted a lesser included offense of the charged offense of attempted murder, the error was not plain because of "[t]he lack of a definitive pronouncement from this court [on this issue] and the disagreement among the lower courts."); *State v. Walker*, 2017-Ohio-9255, ¶ 30 (1st Dist.) (declining to find plain error in the absence of "a bright-line rule that would have clearly demonstrated an obvious defect").This reasoning comports with how plain error is addressed by federal courts. *See United States v. Turner*, 2024 U.S. App. LEXIS 30968, *3 (6th Cir.

25

Dec. 6, 2024) (to establish plain error, the appellant "must identify a case in our court or the Supreme Court evidencing the error"); *United States v. Vaughn*, 119 F.4th 1084, 1090 (6th Cir. 2024), citing *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (a finding of plain error will be precluded by both a circuit split and a "lack of binding case law").

**{¶56}** While the trial court's failure to provide the jury in this case with final instructions and/or verdict forms that specified which act committed by Rodriguez correlated to each count of the indictment was erroneous under both *Shaw* and *Valentine*, there is no binding case law from this court or the Ohio Supreme Court on the issue. Under the law set forth in this latter group of cases, this would preclude a finding of plain error.

**{¶57}** However, some courts have elected to find plain error in the absence of binding case law. In *Davidson v. Kentucky*, 2006 Ky.App.Unpub. LEXIS 1224, *1-2 (Feb. 3, 2006), Davidson appealed a conviction for second-degree assault for causing physical injury to another with a deadly weapon or dangerous instrument. He argued that his fists could not constitute a "dangerous instrument" and that the trial court erred by instructing the jury otherwise. *Id.* at 13-14. Davidson had not objected to this jury instruction below. *Id.*

**{¶58}** While acknowledging that "[a]n error may be readily noticeable and palpable where the trial court fails to follow clear, binding precedent," the court recognized that whether fists constituted a dangerous instrument was an issue of first impression, and that "Kentucky courts have not addressed whether a trial court's erroneous statutory construction can be considered a palpable error when it concerns an issue of first impression." *Id.* at 25. In electing to find plain, or palpable, error in the jury instructions in the absence of binding precedent, *id.* at 27, the court relied on

26

federal law stating, "The lack of such precedent, however, does not prevent a finding of plain error if the error was, in fact, clear or obvious based on the materials available to the district court." *Id*. at 25, quoting *United States v. Lachowski*, 405 F.3d 696, 698-699 (8th Cir. 2005).

**{¶59}** The purpose of the plain-error rule is to encourage parties to raise objections in a timely manner so that the trial court has an opportunity to fix the error. *See In re A.J.O.*, 2019-Ohio-975, ¶ 27 (1st Dist.). Although the error in the jury instructions and/or verdict forms in this case was not brought to the court's attention by either of the parties, it was nonetheless brought to the court's attention at a time when the court could have fixed the error. *See State v. Rutledge*, 2019-Ohio-3460, ¶ 45 (10th Dist.) (in response to a question submitted by the jury during deliberations, the court may issue a response or clarification that is consistent with or supplements the previously provided instructions).

**{¶60}** Here, the two questions submitted by the jury during deliberations established that, based on the jury instructions and verdict forms that it was provided, the jury was unable to differentiate between the charges or to determine which act corresponded to each count. The obvious nature of the defect in the proceedings that was brought to the court's attention, coupled with the holdings of *Shaw* and *Valentine* and the lack of conflicting authority from either this court, the Ohio Supreme Court, or any other lower court in Ohio, lead us to conclude that the error in this case was plain and obvious and that the second prong of the plain-error analysis has been satisfied.

### C. *Rodriguez's Substantial Rights Were Impacted*

**{¶61}** The third prong of the plain-error analysis requires Rodriguez to establish that the error impacted her substantial rights. *Sowders*, 2023-Ohio-4498, at

27

¶ 11 (1st Dist.). Rodriguez contends that she is unable to determine which conduct the jury found her guilty of and which conduct she was acquitted of, and that she is consequently unable to challenge the sufficiency or the weight of the evidence supporting her convictions on appeal. She argues that this deprivation of the means to an effective appeal is in violation of her due-process rights. She further argues that, in the event a new trial is granted, there is a substantial risk that she could be retried for a crime of which she has already been acquitted in violation of her right to be free from double jeopardy.

{¶62} The concerns noted by Rodriguez are valid in light of the error that occurred below. But Ohio courts have historically interpreted the third prong of the plain-error analysis as requiring the appellant to show that the error "'affected the outcome of the trial.'" *Id.*, quoting *Barnes*, 94 Ohio St.3d at 27; *State v. Jones*, 2020-Ohio-3051, ¶ 18 ("Whether the defendant's substantial rights were affected depends on whether the error was prejudicial, i.e., whether it affected the outcome of the trial."); *Bond,* 2022-Ohio-4150, at ¶ 17. An appellant meets this requirement by demonstrating a "reasonable probability" that, but for the error, the outcome of the trial would have been different. *State v. Mounts*, 2023-Ohio-3861, ¶ 52 (1st Dist.).

{¶63} Recently, the Ohio Supreme Court made an exception to this outcome-determinative requirement in a plain-error analysis, but only in cases involving structural error. *Bond* at ¶ 32. In *Bond*, the appellant argued on appeal that a courtroom closure in the trial court violated his right to a public trial under both the United States and Ohio Constitutions. *Id.* at ¶ 1. The Court recognized that this alleged error was a structural error, and that because Bond had failed to object to the closure in the trial court, the closure was subject to a plain-error review. *Id.* at ¶ 7.

{¶64} The Court directly confronted the issue of whether structural errors

were subject to an outcome-determinative analysis under a plain-error review. It explained that the language of Crim.R. 52(B), which codifies plain-error review, does not require that the error affect the outcome of the trial. *Id.* at ¶ 25. Rather, the rule "simply states that '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" (Bracketed text in original.) *Id.*, quoting Crim.R. 52(B). The Court further explained that "[s]tructural errors are constitutional defects that defy analysis by harmless-error standards because they 'affect[] the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" (Second bracketed text in original.) *Id.* at ¶ 26, quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-310 (1991). The Court ultimately determined that:

> [A] structural error may affect substantial rights even if the defendant cannot show that the outcome of the trial would have been different had the error not occurred. To conclude otherwise would be to ignore the long-standing structural-error doctrine, the purpose of which "is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial."

*Id.* at ¶ 32, quoting *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017).

{¶65} The Court's expansion of the third prong of the plain-error analysis was based on the unique nature of structural errors and was incontrovertibly limited to cases involving structural error. And there is no question that a structural error is not implicated in the case at bar. Accordingly, to establish that her substantial rights have been impacted, Rodriguez must show a "reasonable probability" that the outcome of the proceedings would have been different but for the trial court's error. *See Mounts*, 2023-Ohio-3861, at ¶ 52 (1st Dist.). That the error had an impact on her rights to due

29

process and to be free from double jeopardy does not seem to be sufficient under current case law to satisfy this third prong, despite the fact that Crim.R. 52(B) does not require that the error affect the outcome of the trial.

{¶66} Rodriguez's underlying argument with respect to the alleged due-process violation is nonetheless relevant to our consideration of whether there is a reasonable probability that the outcome of the proceedings would have been different. As set forth above, Rodriguez contends that she is unable to challenge the sufficiency or the weight of the evidence supporting her convictions on appeal because she cannot determine which conduct the jury found her guilty of and which conduct she was acquitted of. The jury's confusion in determining which act of torture or abuse corresponded to each count of the indictment was clearly documented in the two questions it submitted during deliberations. And the response given by the trial court to the jury's questions did not provide the jury with a direct answer or provide them with guidance or the means to find the answer.

{¶67} In *State v. Gardner*, 2008-Ohio-2787, the Court suggested that jury confusion could amount to plain error. In *Gardner*, the defendant was charged with aggravated burglary and the jury instruction for that offense failed to specify that the jury needed to unanimously agree as to what criminal act the defendant intended to commit during the course of the burglary. *Id.* at ¶ 24-27. The Court declined to find plain error where "[t]here [was] no suggestion of jury confusion" and "[t]he jury did not question the meaning of the 'any criminal offense' element." *Id.* at ¶ 79.

{¶68} The record establishes jury confusion in this case. It does not establish that the jury understood or was aware of what actions were associated with the counts for which it returned guilty verdicts. We therefore hold that there is a reasonable probability that, but for the trial court's error in failing to provide the jury with final

instructions and/or verdict forms that specified which conduct was the basis of each count, there is a reasonable probability that the outcome of the proceedings would have been different.

**{¶69}** We must stress that we likely would reach a different outcome had the jury, like the jury in *White*, found Rodriguez guilty of all charged offenses. In such a situation, despite the failure of the jury instructions or verdict forms to specify which act corresponded to which count, there would be no question as to which acts the jury found the defendant to have committed. But where the jury returns a guilty verdict as to some, but not all, of the charged offenses, and where the jury exhibits confusion as to which actions correlate to each count, there is no way for the defendant or a reviewing court to effectively determine upon which acts the convictions were based.

**{¶70}** Finally, even if a reviewing court finds plain error, the error should only be corrected where it "seriously affects the fairness, integrity, or public reputation of judicial proceedings" or when necessary "to prevent a manifest miscarriage of justice." *Bond*, 2022-Ohio-4150, at ¶ 35. Correction of the error is necessary in this case to prevent a manifest miscarriage of justice. Rodriguez was found guilty of four counts of endangering children but is unable to challenge the sufficiency or the weight of the evidence supporting those convictions on appeal because, as a result of the error that occurred below, she does not know what acts she stands convicted of. *See State v. Marcum*, 166 Wis.2d 908, 925 (Wis.App. 1992) (where defendant was charged with multiple counts of sexual assault of a juvenile but was only convicted of one count, and where the jury instructions and verdict forms did not distinguish the defendant's illegal acts, the defendant was "prejudiced by not knowing what act he stands convicted of"); *see also Valentine*, 395 F.3d at 638 ("The Constitution . . . demand[s] that if a defendant is going to be charged with multiple counts of the same crime, there

must be some minimal differentiation between the counts at some point in the proceeding."). We accordingly hold that the trial court committed plain error when it failed to provide the jury with final instructions and/or verdict forms that specified which conduct was the basis of each count of the indictment. Rodriguez's first assignment of error is sustained.

### D. Retrial is Precluded

**{¶71}** Rodriguez argues that, as a remedy for the trial court's error, we must reverse the trial court's judgment and hold that retrial is precluded under the doctrine of double jeopardy. We are constrained to agree.

**{¶72}** Both the Double Jeopardy Clause, set forth in the Fifth Amendment to the United States Constitution and applied to Ohio by the Fourteenth Amendment, and its twin provision in Article 1, Section 10 of the Ohio Constitution, prohibit prosecuting an individual multiple times for the same offense. *State v. Mutter*, 2017-Ohio-2928, ¶ 2. The Double Jeopardy Clause protects against three different types of abuses: (1) the prosecution of an individual for the same offense after an acquittal, (2) the prosecution of an individual for the same offense after a conviction, and (3) the imposition of multiple punishments for the same offense. *Id.* at ¶ 15, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).

**{¶73}** As a result of the trial court's error, Rodriguez does not know which acts were included in the guilty verdicts and which acts she was acquitted of. As such, if we were to reverse and remand for a new trial, Rodriguez would face a potential retrial for acts upon which she has already been acquitted. *See Shaw*, 2008-Ohio-317, at ¶ 25 (2d Dist.) (Double Jeopardy Clause precluded retrial where "there [was] no way to know upon which of the charges [defendant] was convicted and upon which of the

charges he was acquitted"); *Marcum*, 166 Wis.2d at 925 ("Part of our problem is that we cannot reverse and remand for a new trial on count six because we do not know what acts were included in the not guilty verdicts of counts four and five. We cannot order a new trial because Marcum might be retried for acts on which the jury has already adjudged him not guilty.").

{¶74} As in *Shaw* and *Marcum*, it is not possible to "eliminate the possibility" that Rodriguez would be retried for an offense upon which she has already been acquitted. *See Shaw* at ¶ 25; *see also Marcum* at 925. We accordingly hold that the Double Jeopardy Clause precludes retrial for the offenses that are the subject of this appeal.

### III.    *Ineffective Assistance*

{¶75} In her second assignment of error, Rodriguez argues that her trial counsel was ineffective for failing to object to the jury instructions and verdict forms. This assignment of error has been rendered moot by our resolution of Rodriguez's first assignment of error, and we decline to address it.

### IV.    *Conclusion*

{¶76} The trial court committed plain error when it failed to provide the jury with final instructions and/or verdict forms that specified which conduct was the basis of each count of the indictment. Because it is impossible to determine which offenses the jury found Rodriguez to have committed and which offenses resulted in acquittals, a retrial is precluded by the Double Jeopardy Clause. The trial court's judgment is reversed, and Rodriguez is discharged from further prosecution for the offenses that are the subject of this appeal.

Judgment accordingly.

**BERGERON, P.J.,** concurs.

**WINKLER, J.,** dissents.

**WINKLER, J.,** dissenting.

{¶77} Because Ohio law does not require a trial court to include a defendant's alleged conduct in the jury instructions or in the verdict forms in order to differentiate counts of the indictment, and because the State's closing argument in this case included a count-by-count reiteration of the defendant's conduct for the jury without any objection by the defendant, the trial court did not commit plain error in failing to include the defendant's alleged conduct in the jury instructions or the verdict forms. Therefore, I dissent.

{¶78} The State indicted defendant-appellant Amy Rodriguez on 11 counts of child endangering with respect to her stepson, C.D. The bill of particulars listed 11 different "punishments" that Rodriguez had imposed on C.D., but other than one punishment that differed temporally from the others, the bill of particulars did not correlate any specific punishment to any specific count in the indictment. The matter proceeded to a lengthy jury trial where Rodriguez was tried along with her parents. The jury ultimately acquitted Rodriguez of Counts 1, 3, 5, 7, 8, 9, and 11, and found her guilty of Counts 2, 4, 6, and 10. Counts 2, 4, 6, and 10 contained the allegations that Rodriguez had committed child endangering sometime between January 2018 and April 2021.

{¶79} On appeal, Rodriguez argues that the trial court committed plain error when it failed to delineate the conduct that allegedly formed the basis of each child-endangering count either in the jury instructions or the verdict forms. Although Rodriguez argues that the trial court committed an obvious error in failing to instruct the jury as to what alleged criminal conduct related to each of the 11 counts, Rodriguez

fails to point to any Ohio law requiring the trial court to do so. Ohio courts have recognized that due process requires that "'if a defendant is going to be charged with multiple counts of the same crime, there must be some minimal differentiation between the counts *at some point in the proceeding*[,]'" but that is exactly what happened in this case when the prosecutor identified the conduct associated with each count in closing argument. (Emphasis in original.) *See State v. Barrett*, 2008-Ohio-2370, ¶ 22 (8th Dist.), quoting *Valentine v. Konteh*, 395 F.3d 626, 638 (6th Cir.2005); *compare People v. Filipiak*, 2023 IL App (3d) 220024, ¶ 16 ("Two sets of identical verdicts forms were submitted to the jury pertaining to the predatory criminal sexual assault charges for [the victim], which were not differentiated, except with parentheticals indicating ("1") and ("2"). Nor did the State in any way suggest to the jury at closing which of the verdict forms pertained to which of the alleged acts of penetration.").

**{¶80}** Rodriguez relies on a case from Kentucky, *Harp v. Commonwealth*, 266 S.W.3d 813, 817 (Ky.2008). In *Harp*, the Kentucky Supreme Court held that the trial court erred in instructing the jury on seven identical sexual-abuse charges without differentiating the counts with testimony from the trial. The *Harp* court reasoned that it had "clearly held—before Harp's trial—that a trial court errs in a case involving multiple charges if its instructions to the jury fail 'factually [to] differentiate between the separate offenses.'" *Id.*, quoting *Combs v. Commonwealth*, 198 S.W.3d 574, 580 (Ky. 2006). The *Harp* court also reasoned that "a failure to include proper identifying characteristics in jury instructions is reversible error, provided that a timely objection to the error has been made." *Id.* at 818.

**{¶81}** The Ohio Supreme Court has never held that a trial court commits error when it fails to include the defendant's alleged conduct in the jury instructions or

verdict forms in order to differentiate identical counts in the indictment, particularly where, as here, the State differentiated the counts in closing argument in its review of the detailed testimony of the various forms of abuse to which the victim was subjected. Even the Kentucky Supreme Court in *Harp* recognized that the trial court's failure to include differentiating facts in the jury instructions constituted reversible error where the defendant objected at trial. *Id.* Here, no objection was made.

**{¶82}** The only Ohio case relied on by the majority is *State v. Shaw*, 2008-Ohio-1317 (2d Dist.). In *Shaw*, the State indicted the defendant on 15 counts of rape and ten counts of sexual battery related to his three minor daughters. The jury found the defendant guilty of some charges and not guilty on most of the charges. The appellate court sustained Shaw's first assignment of error on the basis of prejudicial, other-acts evidence admitted at trial. In Shaw's second assignment of error, he argued that his due-process rights were violated because his offenses were not charged with sufficient specificity. The appellate court rejected Shaw's argument that the indictment was insufficient, but the court nevertheless determined that it would be impossible on retrial to ensure that Shaw was not being tried for an offense of which he had been acquitted, because the proceedings did not differentiate which specific facts applied to which charge either before or during trial. Unlike *Shaw*, any double-jeopardy concern in this case is purely speculative.

**{¶83}** Rodriguez argues that her due-process rights have been violated because she has lost the means to effectively appeal her convictions on manifest-weight or sufficiency grounds. First, Rodriguez can rely on the State's theory of the case in closing argument to correlate the counts in the indictment with the verdicts. Second, Rodriguez has not even attempted to formulate any challenges to the weight or sufficiency of the evidence with respect to any of the counts. Rodriguez's defense at

trial was that none of these "punishments" occurred, and that C.D. was lying.

**{¶84}** In conclusion, I would hold that the trial court did not commit plain error by failing to include Rodriguez's alleged conduct in the jury instructions or verdict forms. I would also overrule Rodriguez's second assignment of error pertaining to ineffective assistance of counsel. Therefore, I would affirm Rodriguez's convictions, and I respectfully dissent.

Please note:

The court has recorded its entry on the date of the release of this opinion.